FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

VICTOR MANUEL RAYA-VACA,
*Defendant-Appellant*.

No. 13-50129

D.C. No.
3:12-cr-05261-IEG-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, Senior District Judge, Presiding

Argued and Submitted
June 5, 2014—Pasadena, California

Filed November 10, 2014

Before: Stephen Reinhardt, Raymond C. Fisher,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Murguia

**SUMMARY**[*]

**Criminal Law**

The panel reversed the district court's denial of a motion to dismiss an information charging, and the defendant's conviction of, illegal reentry after having been removed in violation of 8 U.S.C. § 1326, and remanded.

Given the Supreme Court's repeated pronouncement that the Due Process Clause applies to all who have entered the United States – legally or not – and given the clear fact of the defendant's entry, the panel held that the defendant was entitled to expedited removal proceedings that conformed to the dictates of due process. The panel held that an immigration officer's failure, during the defendant's expedited removal proceedings, to advise the defendant of the charge against him and to permit him to review the sworn statement prepared by the officer violated the defendant's due process rights to notice and an opportunity to respond.

The panel held that the defendant suffered prejudice as a result of the entry of the removal order because he could plausibly have been granted relief in the form of withdrawal of his application for admission. The panel concluded that the removal order was, accordingly, fundamentally unfair and cannot serve as the predicate for his conviction under § 1326.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Chloe S. Dillon (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Mark R. Rehe (argued), Assistant United States Attorney; Laura E. Duffy, United States Attorney; Bruce R. Castetter, Assistant United States Attorney, San Diego, California, for Plaintiff-Appellee.

**OPINION**

MURGUIA, Circuit Judge:

Victor Manuel Raya-Vaca appeals from a judgment of conviction following a conditional plea of guilty to one count of illegal reentry after having been removed in violation of 8 U.S.C. § 1326. In 2011, Raya-Vaca was arrested while in the United States, subjected to expedited removal proceedings under 8 U.S.C. § 1225, and removed; he was later found in the United States and again arrested. He collaterally attacks the removal order entered against him in 2011, upon which his conviction under § 1326 was predicated. Raya-Vaca contends that his expedited removal proceedings did not comport with due process because, among other errors, the immigration officer who entered the removal order failed to provide Raya-Vaca with notice of the charge against him and an opportunity to respond. Raya-Vaca further asserts that he suffered prejudice as a result. We agree. Accordingly, we reverse the district court's denial of Raya-Vaca's motion to dismiss the information and the subsequent conviction.

**Factual and Procedural History**

## I.   Background on Raya-Vaca

Raya-Vaca, a 33-year-old native and citizen of Mexico, first came to the United States at approximately the age of six.  His mother brought him and his siblings to join his father, who at the time was living and working in Salinas, California.  While his parents worked in agriculture, Raya-Vaca attended school and, after turning eighteen, held various full-time jobs.  At age twenty-four, he began a relationship with Trisha, a natural-born United States citizen.  The two lived together for seven years before Raya-Vaca's removal, and they have two children who are United States citizens. Raya-Vaca's brother is also a United States citizen.

While in California, Raya-Vaca was convicted of three misdemeanors.  In 2003, he was convicted of misdemeanor burglary in violation of California Penal Code section 459 and sentenced to ten days in jail and three years of probation. In 2010, he was convicted of obstruction of a police officer in violation of California Penal Code section 148(a)(1) and false identification to a police officer in violation of California Penal Code section 148.9(a), for which he served three days in jail and three years of probation.

Raya-Vaca has also had prior contact with immigration authorities.  Immigration officials sent him to Mexico in 2009, after which he sought to reenter the United States in March 2009, May 2009, June 2009, September 2009, November 2009, and September 2010.  On three of those occasions, some of the individuals traveling with Raya-Vaca identified him as a smuggler.  With the exception of his attempted reentry in September 2009, Raya-Vaca returned

voluntarily to Mexico—and therefore suffered no formal immigration consequences, such as a removal order—after each attempted entry. After attempting to reenter on September 19, 2009, however, Raya-Vaca stipulated to removal and waived his right to a hearing; an immigration judge (IJ) then considered Raya-Vaca's written representations of waiver sufficient to find him removable and issued an order of removal on September 22, 2009.

## II. Raya-Vaca's July 2011 Reentry and Removal Order

On July 24, 2011, Raya-Vaca entered the United States by "walking through the mountains," with the intention of returning to Salinas to join his family. He was apprehended the following day near the State Route 94 Border Patrol checkpoint outside Potrero, California. Immigration officials initiated expedited removal proceedings pursuant to 8 U.S.C. § 1225.

### A. Expedited Removal Proceedings Under 8 U.S.C. § 1225

An expedited removal proceeding under 8 U.S.C. § 1225 allows immigration officers to (1) determine whether certain aliens are inadmissible, and (2) enter removal orders, generally without hearing or further review.

Two classes of individuals are subject to expedited removal proceedings. Originally, only aliens "arriving" in the United States were subject to the proceedings. However, the Department of Homeland Security (DHS) has expanded the reach of expedited removal proceedings to aliens who have entered the United States, as long as they (1) "are physically present in the U.S. without having been admitted or paroled,"

(2) are discovered "within 100 air miles" of the United States border, and (3) cannot establish that they have been "physically present in the U.S." for the fourteen days prior to the encounter with immigration authorities. Designating Aliens For Expedited Removal, 69 Fed. Reg. 48877-01, 48880 (Aug. 11, 2004). All such aliens are deemed "applicants for admission" into the United States, regardless of whether they seek to enter at a port of entry or have already entered the country. 8 U.S.C. § 1225(a)(1).

During an expedited removal proceeding, an immigration officer must conduct an inspection and determine whether the alien is inadmissible because the alien (1) has made a material misrepresentation to gain admission into the United States, (2) has "falsely represent[ed]" himself to be a United States citizen, or (3) does not possess a "valid entry document." *See* 8 U.S.C. § 1225(a)(3), (b)(1)(A)(i); *see also id.* § 1182(a)(6)(C)(i), (a)(6)(c)(ii)(I), (a)(7)(A)(i). When making a finding of inadmissibility, the examining immigration officer must "create a record of the facts of the case and statements made by the alien." 8 C.F.R. § 235.3(b)(2)(i). The officer "shall . . . have the alien read (or have read to him or her) the statement." *Id.* Moreover, the officer "shall advise the alien of the charges against him or her on Form I-860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement." *Id.* Then, if the officer determines the alien to be inadmissible, "the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i).

Unless an alien professes a fear of persecution or claims to be a lawful permanent resident (LPR), an expedited removal order "is not subject to administrative appeal." *Id.* § 1225(b)(1)(C). However, the Attorney General has the discretion to provide a type of statutory relief to certain aliens: withdrawal of application for admission. *See id.* § 1225(a)(4). When an individual is permitted to "withdraw" his application for admission, he may leave voluntarily and without a removal order, and thus without facing formal immigration consequences.[1] *See* 8 C.F.R. § 1235.4.

## B. Raya-Vaca's Expedited Removal Proceedings

Raya-Vaca faced expedited removal proceedings because he was present in the United States without admission, had been discovered within 100 miles of the border, and could not establish that he had been present in the United States for the prior fourteen days. *See* Designating Aliens For Expedited Removal, 69 Fed. Reg. at 48880.

During Raya-Vaca's expedited removal proceedings, Border Patrol Agent Alberto Baca interviewed Raya-Vaca in English and prepared a Record of Sworn Statement. Raya-Vaca then signed an acknowledgment that he had read the Record of Sworn Statement (the Jurat). Agent Baca found Raya-Vaca inadmissible and subject to removal because he had illegally entered the United States without inspection and was not in possession of any valid documentation permitting him to enter. Agent Baca ordered that Raya-Vaca be removed from the United States.

---

[1] As noted earlier, any individual subjected to expedited removal proceedings is deemed to have applied for admission, even if he sought to enter or entered the United States illegally. *See* 8 U.S.C. § 1225(a)(1).

### III.    Proceedings Before the District Court

On November 27, 2012, a Border Patrol agent arrested Raya-Vaca and several other individuals about seven miles north of the United States-Mexico border, near Tecate, California. When Raya-Vaca admitted that he was a Mexican citizen with no valid entry documents, the agent arrested Raya-Vaca and transported him to a Border Patrol station.

On December 27, 2012, the Government charged Raya-Vaca by information with one count of illegal reentry after having been removed from the United States, in violation of 8 U.S.C. § 1326(a).

Raya-Vaca moved to dismiss the information under 8 U.S.C. § 1326(d), asserting that no valid removal order existed upon which the information could be predicated. Raya-Vaca contended that neither the 2009 stipulated removal order nor the 2011 expedited removal order could serve as a valid predicate for the prosecution under 8 U.S.C. § 1326. The Government disclaimed any intent to rely on the 2009 stipulated removal order as a predicate element for the § 1326 charge. Instead, the Government contended that Raya-Vaca had no plausible relief from his 2011 removal order and thus that he suffered no prejudice attributable to any due process violation at his 2011 expedited removal proceeding. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011) (stating that to show prejudice, an alien must show that he had plausible grounds for relief). Therefore, according to the Government, Raya-Vaca's challenge under § 1326(d) to his 2011 removal order could not succeed.

The district court denied Raya-Vaca's motion to dismiss the information. Given the Government's failure to argue that no due process violation occurred, the district court assumed that Raya-Vaca's due process rights were violated in the course of his 2011 expedited removal proceedings and looked to whether an immigration official would plausibly have exercised his discretion to grant Raya-Vaca relief in the form of withdrawal of his application for admission. After weighing the factors outlined in the Immigration and Naturalization Service's (INS) Inspector's Field Manual, which discusses when an official should permit an alien to withdraw his application for admission, the district court deemed it implausible that Raya-Vaca would have been granted such relief and thus concluded he could not show prejudice.[2]

Raya-Vaca entered a conditional guilty plea, preserving his right to appeal the district court's denial of his § 1326(d) motion. The district court sentenced him to time served (108 days in prison) and one year of supervised release. The district court entered judgment on March 15, 2013, and Raya-Vaca filed a timely notice of appeal.

**Standard of Review**

We review "a denial of a motion to dismiss an 8 U.S.C. § 1326 indictment de novo when the motion is based upon . . . alleged due process defect[s] in the underlying deportation proceeding." *United States v. Camacho-Lopez*, 450 F.3d 928,

---

[2] The district court rejected the standard for prejudice proffered by the Government—that laid out in *Matter of Gutierrez*, 19 I. & N. Dec. 562 (BIA 1988). The Government does not argue on appeal that the prejudice standard from *Matter of Gutierrez* should apply.

929 (9th Cir. 2006) (internal quotation marks omitted). We review for clear error the district court's findings of fact. *Id.*

## Discussion

For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant "left the United States under order of exclusion, deportation, or removal, and then illegally reentered."[3] *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1079 (9th Cir. 2011).

A defendant charged under § 1326 has a due process right "to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004). To sustain a challenge to an indictment (or information) under § 1326, a defendant must demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings "improperly deprived [him] of the opportunity for judicial review"; and (3) the removal order was "fundamentally unfair." 8 U.S.C. § 1326(d). To satisfy the third prong—that the order was fundamentally unfair— the defendant bears the burden of establishing both that the "deportation proceeding violate[d] [his] due process rights" and that the violation caused prejudice. *United States v. Leon-Leon*, 35 F.3d 1428, 1431 (9th Cir. 1994).

---

[3] As it did before the district court, the Government relies solely on Raya-Vaca's 2011 removal order (not on his 2009 stipulated removal order) as a predicate removal order for his conviction under § 1326.

## I. Administrative Exhaustion and Deprivation of Judicial Review

As the district court recognized and as the Government concedes, the statute governing expedited removal proceedings afforded Raya-Vaca no opportunity for administrative or judicial review. *See, e.g.*, 8 U.S.C. § 1225(b)(1)(C) ("Except as provided [in the subparagraph on credible-fear interviews], a removal order . . . is not subject to administrative appeal . . . ."); *id.* § 1225(b)(1)(A)(i) ("If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible . . . , the officer shall order the alien removed from the United States *without further hearing or review* . . . ." (emphasis added)); *see also Barajas-Alvarado*, 655 F.3d at 1082 ("[T]he [Immigration & Nationality Act (INA)] precludes meaningful judicial review of the validity of the proceedings that result in an expedited removal order."). We therefore conclude that Raya-Vaca exhausted all available administrative remedies and was deprived of the opportunity for judicial review.

## II. Due Process Violation

Raya-Vaca must next establish that the removal order was fundamentally unfair—meaning, in part, that the expedited removal proceedings as conducted failed to comply with the requirements of due process. *See* 8 U.S.C. § 1326(d)(3); *Leon-Leon*, 35 F.3d at 1431. To this end, he asserts that he suffered three distinct due process violations during his 2011 expedited removal proceedings: (1) the immigration officer's failure to inform Raya-Vaca (in violation of DHS regulations) of the charge of inadmissibility he faced and to read to him (or allow him to read) his sworn statement; (2) the officer's failure to advise Raya-Vaca of the possibility of withdrawing

his application for admission; and (3) the officer's failure to afford Raya-Vaca the opportunity to consult with counsel.

## A. Applicability of the Due Process Clause

We first confront the threshold question whether the Due Process Clause, with its attendant protections, applied to Raya-Vaca at the time of his expedited removal proceedings.

The Supreme Court has categorically declared that once an individual has entered the United States, he is entitled to the protection of the Due Process Clause.[4] In *Zadvydas v. Davis*, the Supreme Court considered the constitutionality of indefinitely detaining aliens who were once admitted to the United States but later ordered removed. 533 U.S. 678, 682 (2001). In holding unconstitutional the indefinite detention of an alien present within the United States, the Court distinguished the situation at hand from one involving an alien seeking entry into the country:

> The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. . . . [O]nce an alien enters the country, [his] legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

---

[4] The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."

*Id.* at 693 (citations omitted). Similarly, when considering whether certain conditions could be placed on an alien's eligibility for federal medical insurance, the Supreme Court stated,

> There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law. Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection.

*Mathews v. Diaz*, 426 U.S. 67, 69, 77 (1976) (citation omitted); *see also, e.g.*, *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to . . . due process of law."). This long line of precedent admits of no exception: an alien who has entered the United States is guaranteed due process protections.[5]

Here, there is no dispute that Raya-Vaca had entered the United States in July 2011 before he was apprehended near the State Route 94 Border Patrol checkpoint, outside Potrero, California, within the borders of the United States. Even an

---

[5] Aliens who have entered the country are thus distinct from aliens at a port of entry, over whom Congress has plenary power, *see Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972), and for whom the process prescribed by Congress constitutes due process, *see United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).

alien who has run some fifty yards into the United States has entered the country. *See United States v. Martin-Plascencia*, 532 F.2d 1316, 1317–18 (9th Cir. 1976) (affirming adjudication of illegal entry for alien who had avoided inspection at the border and had run into the country before being apprehended); *see also Matter of Z-*, 20 I. & N. Dec. 707, 713–14 (BIA 1993) (finding that alien had entered country when he disembarked from his vessel "onto dry land within the territorial boundaries of the United States at an area not designated as a port of entry," after which he "fled for some distance into the interior").

Heeding, as we must, the Supreme Court's repeated pronouncement that the Due Process Clause applies to all who have entered the United States—legally or not—and given the clear fact of Raya-Vaca's entry, we hold that Raya-Vaca was entitled to expedited removal proceedings that conformed to the dictates of due process.[6]

## B. Due Process Right to Notice and Opportunity to Respond

Our conclusion that the Due Process Clause applied to Raya-Vaca, however, does not end the inquiry. Raya-Vaca contends that the immigration officer conducting the expedited removal proceedings failed to advise Raya-Vaca of the charge against him and to read to him (or permit him to read) the sworn statement the officer prepared, in violation of DHS regulations and Raya-Vaca's due process rights. We

---

[6] There is no dispute that Raya-Vaca faced the deprivation of a liberty interest during his expedited removal proceeding. *See Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1161 (9th Cir. 2004) (declaring that "[a]n alien facing deportation confronts the loss of a significant liberty interest").

must determine whether Raya-Vaca indeed had such due process rights and, if so, whether they were violated during the 2011 expedited removal proceedings.

The regulations governing expedited removal proceedings codify, in mandatory terms, the immigration officer's duty to inform the alien of the charge against him and to allow the alien to review the sworn statement prepared in his name. *See* 8 C.F.R. § 235.3(b)(2)(i) ("The examining immigration officer shall advise the alien of the charges against him or her . . . , and the alien shall be given an opportunity to respond to those charges in the sworn statement."); *see also id.* (requiring the examining officer to take the alien's sworn statement and to "have the alien read (or have read to him or her) the statement").**[7]**

---

**[7]** The relevant regulatory provision, 8 C.F.R. § 235.3(b)(2)(i), reads as follows:

> In every case in which the expedited removal provisions will be applied and before removing an alien from the United States pursuant to this section, the examining immigration officer shall create a record of the facts of the case and statements made by the alien. This shall be accomplished by means of a sworn statement using Form I–867AB . . . . The examining immigration officer shall read (or have read) to the alien all information contained on Form I–867A. Following questioning and recording of the alien's statement regarding identity, alienage, and inadmissibility, the examining immigration officer shall record the alien's response to the questions contained on Form I–867B, and have the alien read (or have read to him or her) the statement, and the alien shall sign and initial each page of the statement and each correction. The examining immigration officer shall advise the alien of the charges against him or her on Form I–860,

Although not every violation of a regulation rises to the level of a due process violation, *see, e.g.*, *United States v. Caceres*, 440 U.S. 741, 751–52 (1979), certain regulations may in fact be "mandated by the Constitution or federal law," *id.* at 749; *see also Bridges v. Wixon*, 326 U.S. 135, 152 (1945) (observing that particular rules and regulations for investigations preceding deportation hearings were "designed to . . . afford [aliens] due process of law"). That is, some regulations protect due process and other constitutional rights. This is the case here. Due process always requires, at a minimum, notice and an opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (identifying "notice and [an] opportunity for [a] hearing appropriate to the nature of the case" as the "essential principle[s] of due process"). The regulations instructing the immigration officer to advise an alien of the charge against him and to permit the alien to read or be read the sworn statement prepared in his name protect those fundamental due process rights: notice of the charge the alien faces and the alien's opportunity to respond to that charge.[8] Accordingly, because Raya-Vaca was protected by the Due Process Clause when he faced removal, we conclude that any failure to inform Raya-Vaca of the charge against him and to provide him the opportunity to review the sworn statement constituted a violation of Raya-Vaca's due process rights. *See Yamataya v. Fisher*, 189 U.S. 86, 94, 101 (1903) (concluding that alien

---

> Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement.

[8] Indeed, in expedited removal proceedings the form on which the charge against the alien is recorded is entitled "*Notice* and Order of Expedited Removal."

who had entered the country, allegedly illegally, several days prior to apprehension had to receive "all opportunity to be heard upon the questions involving [her] right to be and remain in the United States" to comport with due process); *cf. United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 882 (1975) (declining to recognize an exception to the Fourth Amendment requirement of articulable reasonable suspicion for stops near the border, even though such an exception would facilitate immigration enforcement).

We further conclude that Raya-Vaca's due process rights to notice and an opportunity to respond were indeed violated during his expedited removal proceedings. Raya-Vaca asserted in a signed declaration that no immigration officer explained to him either the nature of the removal proceedings or that he could be ordered removed from the United States. Raya-Vaca further asserted that the immigration officer neither read to him nor permitted him to review the information in the sworn statement. While Raya-Vaca initialed the Record of Sworn Statement and signed the Jurat, he did not, according to his declaration, understand what he was signing. Further, Raya-Vaca acknowledged on the Jurat that he had "read (or . . . had read to [him]) this statement, consisting of 1 pages (including this page)." However, the Record of Sworn Statement and Jurat together totaled four pages, and the Jurat—the sole page Raya-Vaca acknowledged having read—including only four questions he was asked and answered, none of which spoke to his admissibility. Beyond suggesting that the number of pages listed on the Jurat was perhaps a typographical error, the Government does not argue that the immigration officer did indeed comply with the regulation at issue by advising Raya-Vaca of the charge against him and reading to him, or allowing him to read, the sworn statement. *Cf. United States v. Ramos*, 623 F.3d 672,

677–78 (9th Cir. 2010) (immigration officer who conducted stipulated removal proceedings testified about the processes she followed). Taking into consideration Raya-Vaca's declaration, the error on the Jurat, and the Government's failure to contest Raya-Vaca's allegations, we hold that the immigration officer failed to advise Raya-Vaca of the charge against him and to permit him to review the sworn statement, in contravention of Raya-Vaca's due process rights.

In so holding, we reject the Government's argument that in order to show the due process violation itself—the first prong of a showing of fundamental unfairness—Raya-Vaca must establish that he was prejudiced by the failure to comply with the regulation. As noted earlier, there are, for present purposes, two types of regulations: (1) those that protect fundamental due process rights, and (2) and those that do not. *Cf. United States v. Caceres*, 440 U.S. 741, 749–53 (1979). The second type of regulation only implicates due process concerns when the failure to comply with the regulation causes prejudice. *See id.* at 752–53; *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979); *see also Montes-Lopez v. Holder*, 694 F.3d 1085, 1093 (9th Cir. 2012) (explaining that the prejudice requirement in *Calderon-Medina* applies to the "violation of a relatively minor procedural rule," not "serious" regulatory violations). A violation of the first type of regulation, however, implicates due process concerns even without a prejudice inquiry. *See United States v. Reyes-Bonilla*, 671 F.3d 1036, 1045–46 (9th Cir. 2012) (holding, without considering prejudice apart from the plausibility of relief, that violation of regulation providing for right to counsel constituted denial of due process); *see also United States v. Vidal-Mendoza*, 705 F.3d 1012, 1015–16 (9th Cir. 2013) (holding, without prejudice inquiry,

that immigration judge's failure to inform alien of eligibility for relief, as required by regulation, violated due process).

Because the regulatory violation here constituted a denial of Raya-Vaca's right to notice and an opportunity to respond, no showing of prejudice is necessary to establish a due process violation. We further reject the Government's argument that it should have been obvious to Raya-Vaca that he was being scrutinized for his presence in the United States without valid documentation. Even if express notice of the charge of inadmissibility were not necessary, we do not see how he could have known the specific charge against him without being told of it, and Raya-Vaca averred he was unaware that he was facing a formal removal order based on his lack of documentation.

Accordingly, we conclude that Raya-Vaca has established a due process violation and thus satisfied the first requirement for showing that his 2011 removal order was fundamentally unfair. We now turn to the final remaining issue: prejudice.[9]

## III.    Prejudice

To succeed in demonstrating that the 2011 expedited removal order was fundamentally unfair, Raya-Vaca must also establish that he suffered prejudice as a result of the entry of the order. *See United States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1085 (9th Cir. 1996); 8 U.S.C. § 1326(d)(3).

---

[9] Because we decide that the expedited removal proceedings violated Raya-Vaca's due process right to notice and an opportunity to respond, we do not address Raya-Vaca's argument that he was constitutionally entitled to other protections—namely, the right to be advised of potential relief and/or the right to consult counsel.

To do so, Raya-Vaca must show that he had "plausible grounds for relief" from the removal order.[10]   *Jimenez-Marmolejo*, 104 F.3d at 1086.

Even though Raya-Vaca did not formally apply for admission to the United States, he is considered to have been an applicant for admission and as such was eligible for "withdrawal of application for admission."[11]   *See* 8 U.S.C. § 1225(a)(4).  As mentioned earlier, an individual granted leave to withdraw his application for admission may exit the United States voluntarily and without a removal order.  *See* 8 C.F.R. § 1235.4.  Raya-Vaca contends that he had plausible grounds for relief from removal in the form of withdrawal of his application for admission.

## A.  Analytical Framework for Plausibility of Relief

To assess whether a defendant has shown that he would plausibly have been granted a discretionary form of relief from removal, we follow a two-step process.  *See United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013).  "First, we identify the factors relevant to the [agency's] exercise of discretion for the relief being sought."  *Id.*  Second, "we determine whether, in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the [defendant's] own case," it was

---

[10] We conclude that Raya-Vaca has satisfied the "plausibility" standard for relief and therefore do not address his argument that he need only show eligibility for relief, a lower threshold, to demonstrate prejudice.

[11] Although certain classes of aliens, for example stowaways, are ineligible for withdrawal of application for admission, *see* 8 U.S.C. § 1225(a)(2), there is no dispute as to Raya-Vaca's eligibility for that form of relief.

plausible that the agency official considering the defendant's case would have granted relief from removal. *Id.* (internal quotation marks omitted).

This court's leading case discussing the plausibility of relief in the form of withdrawal of application for admission is *United States v. Barajas-Alvarado*, 655 F.3d 1077 (9th Cir. 2011). In *Barajas-Alvarado*, we looked for guidance to the Inspector's Field Manual, an internal agency document that counsels immigration officers as to when to grant withdrawal of application for admission. *See id.* at 1090. As noted in *Barajas-Alvarado*, the Inspector's Field Manual, while not entitled to the force of law, provides helpful insight as to when relief is plausible—and as to whether relief was plausible for Raya-Vaca in 2011. *See id.* at 1090 n.16.

The Inspector's Field Manual provides for a highly individualized determination and instructs officers to "consider all facts and circumstances related to the case to determine whether permitting withdrawal would be in the best interest of justice." INS Inspector's Field Manual § 17.2(a) (2007), *available at* Westlaw FIM–INSFMAN 17.2, 2007 WL 7710869; *see also Matter of Vargas-Molina*, 13 I. & N. Dec. 651, 652–53 (BIA 1971). The Manual also enumerates six factors relevant to the question of relief: "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations." *Barajas-Alvarado*, 655 F.3d at 1090 (citing INS Inspector's Field Manual § 17.2(a) (2001)). This list of considerations is non-exhaustive. *See* INS Inspector's Field Manual § 17.2(a) (2007) (specifying that relevant

factors "are not limited to" the enumerated considerations); *see also Barajas-Alvarado*, 655 F.3d at 1091 (evaluating the weight due to unenumerated factors, taking into account the Manual's failure to identify the factors specifically). Finally, the Manual identifies germane considerations, noting in particular that withdrawal should "ordinarily" not be permitted "in situations where there is obvious, deliberate fraud on the part of the applicant." *Id.* (citing as an example of obvious fraud the use of counterfeit documents).

In *Barajas-Alvarado*, we concluded that the defendant had not demonstrated that he would plausibly have been granted relief in the form of withdrawal at the time of his expedited removal proceedings. *Id.* at 1089. Critically, Barajas-Alvarado had "conceded that he had deliberately presented false documents to inspection officers," thereby committing "obvious, deliberate fraud." *Id.* at 1090. In addition, he had multiple prior findings of inadmissibility, and his false documents evinced his intent to violate the law. Barajas-Alvarado could not "easily overcome such grounds of inadmissibility," and none of the other circumstances we took into account made relief plausible given these concerns. *Id.* at 1090–91.

Conducting the corresponding, fact-specific analysis here, we remain cognizant of the threshold Raya-Vaca must satisfy: he must prove only the *plausibility* of relief. Raya-Vaca cannot succeed by merely showing a "theoretical[]" possibility of relief, *see United States v. Reyes-Bonilla*, 671 F.3d 1036, 1050 (9th Cir. 2012), but he need not prove that relief was probable, *cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (emphasizing in the notice-pleading context that the requirement that a pleading proffer "plausible grounds" for a claim "does not impose a probability

requirement"). Certainly, he need not show "that he definitely would have received immigration relief." *Barajas-Alvarado*, 655 F.3d at 1089. Instead, Raya-Vaca need only establish "some evidentiary basis on which relief could have been granted." *Reyes-Bonilla*, 671 F.3d at 1049–50.

## B. Plausibility of Relief Given Raya-Vaca's Unique Circumstances

Bearing in mind the guidance provided by the Inspector's Field Manual and the definition of plausibility, we turn to Raya-Vaca's case.

First and foremost, Raya-Vaca committed no fraud, let alone obvious or deliberate fraud, when entering the United States. Therefore, a crucial consideration that, according to the Inspector's Field Manual, "ordinarily" militates against withdrawal—and a consideration of singular importance in *Barajas-Alvarado*, 655 F.3d at 1090—is absent here.

Several of the factors listed by the Manual cut against Raya-Vaca's claim that relief was plausible. Given his history of illegal reentries—six, according to the Government—Raya-Vaca's immigration violation was relatively serious.[12] Further, although the 2009 stipulated removal order may present due process concerns, *see United States v. Ramos*, 623 F.3d 672 (9th Cir. 2010), Raya-Vaca does not contest on appeal that the order constitutes a prior finding of inadmissibility. Raya-Vaca also intended to

---

[12] It is unclear whether the immigration officer was aware of all six of the prior illegal entries asserted by the Government. Raya-Vaca's Record of Deportable/Inadmissible Alien from July 2011 only makes reference to three prior entries.

violate the law, as evidenced by his prior unlawful entries and the fact that he entered the United States by "walking through the mountains." However, these considerations are not dispositive: the Government does not dispute that recidivist immigration violators are permitted to withdraw their applications for admission, and the record includes an example of the granting of withdrawal to a recidivist immigration violator.

In addition, neither Raya-Vaca's apparent good health nor his age supports his assertion that relief was plausible. The same is true for his ability to easily overcome his ground of inadmissibility: Raya-Vaca had no petitions for status pending in 2011, and was not officially married to a United States citizen, so it is not evident that he could have "easily" overcome his inadmissibility for lack of valid documentation.[13] However, that both his long-term partner and his brother were citizens suggests that Raya-Vaca may have had a relatively straightforward path to legal status, a relevant consideration given the Manual's instruction to "consider all facts and circumstances related to the case." INS Inspector's Field Manual § 17.2(a); *see also* 8 C.F.R. § 204.2(g).

Under the final factor identified by the Manual, Raya-Vaca presents significant humanitarian considerations

---

[13] The Government suggests that Raya-Vaca could not overcome his ground of inadmissibility because he was also inadmissible for reentering the United States without inspection after having been removed in 2009. *See* 8 U.S.C. § 1182(a)(9)(C)(i)(II). However, the Inspector's Manual focuses on the alien's "[a]bility to easily overcome *the* ground of inadmissibility"—the ground of inadmissibility with which the alien was charged. INS Inspector's Field Manual § 17.2(a) (emphasis added). We thus consider other asserted grounds of inadmissibility less relevant.

counseling in favor of relief. Raya-Vaca's partner Trisha and their children, in addition to his mother, siblings, and much of his extended family, currently live in the United States. There is a "compelling humanitarian interest in keeping families united," so the humanitarian and public interest factors weigh significantly in Raya-Vaca's favor. *United States v. Haro-Munoz*, 552 F. App'x 689, 690 (9th Cir. 2014); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (observing that an alien's "right to rejoin [his] immediate family . . . ranks high among the interests of the individual"); *Cerrillo-Perez v. INS*, 809 F.2d 1419, 1423 (9th Cir. 1987) (noting that "the Constitution protects the sanctity of the family precisely because it is deeply rooted in the Nation's history and tradition" (internal quotation marks omitted)); 8 U.S.C. § 1182(d)(11) (INA "family unity" provision for the waiver of inadmissibility recognizing that "assur[ing] family unity" is in the public interest).

Certain other considerations counsel in Raya-Vaca's favor. First, his misdemeanor criminal history is fairly minimal and does not appear to have much bearing on the plausibility of relief. Second, Raya-Vaca offers a record from another case in which withdrawal of application for admission was granted. While that record of withdrawal does not explain why relief was granted and thus does not help Raya-Vaca carry his burden, *see Barajas-Alvarado*, 655 F.3d at 1091 n.17, it does make clear that even an individual with a conviction for false statement to a federal officer, no pending petitions for legal status, and a prior exclusion order can be permitted to withdraw his application for admission—and thus relief under such circumstances was plausible.

Third, Raya-Vaca presents statistics from DHS demonstrating that a significant proportion of aliens apprehended were permitted to withdraw their applications for admission. In fiscal year 2004, approximately 70 percent of the individuals subject to expedited removal proceedings were allowed to withdraw their applications.[14] *See* Dep't of Homeland Sec., Annual Report: Immigration Enforcement Actions 2004, at 6 (2005), *available at* http://www.dhs.gov/xlibrary/assets/statistics/publications/ AnnualReportEnforcement2004.pdf. The percentage dropped thereafter, but even in fiscal year 2008 (after which DHS stopped publishing the data) fully 44 percent of aliens subject to expedited removal proceedings were afforded this relief. *See* Dep't of Homeland Sec., Annual Report: Immigration Enforcement Actions 2008, at 1, 4 (2009), *available at* http://www.dhs.gov/xlibrary/assets/statistics/publications/ enforcement_ar_08.pdf. According to our precedent, statistics alone cannot establish the plausibility of relief. *See Barajas-Alvarado*, 655 F.3d at 1091 (observing that "a general statistic that 'discretionary relief applications are granted fifty percent of the time' was insufficient to show plausibility of relief");[15] *United States v. Corrales-Beltran*, 192 F.3d 1311, 1318 (9th Cir. 1999) (rejecting defendant's effort to show prejudice by relying solely on statistics on the granting of relief). However, the Supreme Court has considered statistics when analyzing immigration claims. *See*

---

[14] The Government challenges the probative value, but not the accuracy, of the DHS statistics cited by Raya-Vaca.

[15] In *Barajas-Alvarado*, we further noted that the value of the statistics Barajas-Alvarado proffered was diminished because the record did not support his claim that "arriving aliens who have used fraudulent documents are generally granted withdrawal." 655 F.3d at 1091. Raya-Vaca does not make any such unsupported claim.

*Demore v. Kim*, 538 U.S. 510, 518–31 (2003) (considering statistics on flight risk posed by non-detained aliens when assessing challenge to immigration statute). And the DHS statistics suggest that, at least in 2008, a very significant proportion of aliens in expedited removal proceedings obtained relief. Although Raya-Vaca's expedited removal proceedings took place in 2011, the data provide relevant context for the frequency with which withdrawal was permitted and, when considered in conjunction with other individualized evidence supporting the plausibility of relief, cuts in Raya-Vaca's favor.

Given these considerations, we conclude that Raya-Vaca has shown that in 2011 he had "some evidentiary basis on which relief could have been granted," *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1050 (9th Cir. 2012), and thus that he had a plausible basis for relief.

The Government contends that Raya-Vaca was an alien smuggler and that, because DHS was "ramping up" its response to his illegal reentries, Raya-Vaca would not have been permitted to leave in 2011 without a formal removal order. However, that argument is belied by the fact that Raya-Vaca appears to have been permitted to leave the United States voluntarily (without facing formal removal orders) in November 2009 and September 2010, even though he had already been flagged as a potential smuggler by mid-2009 and had stipulated to a formal removal in September 2009.[16] Raya-Vaca was also permitted to voluntarily return to Mexico in June 2009, even though he had been identified as a potential smuggler during that unlawful entry.

---

[16] Further, Raya-Vaca vehemently contests the allegations of smuggling.

The Government further cites a number of cases in which we have concluded that relief in the form of withdrawal was implausible to suggest the difficulty of establishing plausible grounds for relief. But a significant majority of those cases involved deliberate fraud that renders relief implausible. Thus, they offer little insight into the case at hand, which involved no such fraud. *See Barajas-Alvarado*, 655 F.3d at 1090 (noting that defendant could not "easily overcome such grounds of inadmissibility" as deliberate fraud and two prior removal orders); *see also, e.g.*, *United States v. Luna-Magdaleno*, 533 F. App'x 792, 793 (9th Cir. 2013); *United States v. Meraz-Olivera*, 472 F. App'x 610, 612 (9th Cir. 2012).

Finally, contrary to the government's argument, the prejudice Raya-Vaca suffered resulted from the due process violation. As noted, it is uncontroverted that no immigration officer explained the nature of the removal proceedings to Raya-Vaca or that he could be ordered removed from the United States. His sworn statement further asserts that had he known he could withdraw his application, he would have asked to do so in order to preserve his ability to reenter the United States legally by avoiding the bar resulting from a removal order.

Although the government cites Raya-Vaca's prior departures as evidence that he must have known that his failure to hold a valid entry document could yield adverse action, in fact they demonstrate precisely the opposite. Because Raya-Vaca's prior departures include five voluntary departures, they support the inference that, absent notification of the nature of the proceedings and the charges against him, he would have assumed that his removal likewise would not bar him from reentry. Consequently, although not going to

the plausibility of ultimate relief, Raya-Vaca would have inquired as to the availability of discretionary relief similar to that which he had previously received on numerous occasions, the immigration officer would have answered his question truthfully, and he then would have applied for relief. *See* INS Inspector's Field Manual, § 2.4, *available at* Westlaw FIM-INSFMAN 2.4 (requiring immigration officers to be honest and fair in their dealings during the admissions process)

We therefore hold that Raya-Vaca has shown that he had some evidentiary basis for relief from his 2011 removal order and therefore that he has successfully challenged that order under 8 U.S.C. § 1326(d).

### Conclusion

In sum, we conclude that Raya-Vaca had entered the United States at the time of his 2011 expedited removal proceedings and was thus entitled to due process in the form of notice of the charge he faced and an opportunity to respond. Because the immigration officer who conducted the proceedings failed to observe Raya-Vaca's due process rights, and because Raya-Vaca could plausibly have been granted relief in the form of withdrawal of his application for admission, we hold that his 2011 removal order is invalid and cannot serve as the predicate for his conviction under 8 U.S.C. § 1326. We therefore reverse the denial of Raya-Vaca's motion to dismiss the information and his conviction.

**REVERSED AND REMANDED.**