**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50370 |
| Plaintiff - Appellee, | D.C. No. 3:13-cr-00130-WQH-1 |
| v. | |
| JUAN JOSE GRANDE, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted November 19, 2014
Pasadena, California

Before: SCHROEDER, PREGERSON, and NGUYEN, Circuit Judges.

Defendant-Appellant Juan Grande appeals the district court's denial of his

motion to dismiss the indictment charging him with illegal reentry under 8 U.S.C.

§ 1326, by arguing that his underlying removal order was invalid. We have

jurisdiction pursuant to 28 U.S.C. § 1291. We reverse.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

"We review de novo the denial of a motion to dismiss an 8 U.S.C. § 1326 indictment when the motion to dismiss is based on alleged due process defects in an underlying deportation proceeding." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004) (internal quotation marks and citation omitted).

"In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." *Id*. (quoting *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998)). Grande "has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id*. To sustain a collateral attack of an expedited removal order, a defendant must demonstrate that the "proceedings were fundamentally unfair, meaning that the procedural errors he identifies deprived him of due process, and he suffered prejudice as a result." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011).

Whereas Grande was not entitled to representation by counsel during his expedited removal proceedings, *see id*., his other alleged due process violations have merit. Grande argues that he suffered a due process violation during his expedited removal because the immigration officials failed to notify him of the allegations against him and failed to read him or allow him to read his sworn

2

statement before signing it. Grande contends that the immigration officials' mistakes violated agency regulation 8 C.F.R. § 235.3(b)(2)(i).

We recently held that an individual's "due process rights to notice and an opportunity to respond were indeed violated during his expedited removal proceedings" because, similar to Grande here, the individual alleged in a declaration that he had not been read the charges and sworn statement before being asked to initial them. *United States v. Raya-Vaca*, 771 F.3d 1195, 1205 (9th Cir. 2014). Like Raya-Vaca, Grande "asserted in a signed declaration that no immigration officer explained to him either the nature of the removal proceedings or that he could be ordered removed from the United States." *Id.* Further, despite having initialed forms explaining the removal process, both defendants maintained that they did not understand what they were signing and "asserted that the immigration officer neither read to him nor permitted him to review the information in the sworn statement." *Id.* Therefore, like Raya-Vaca, Grande "established a due process violation and thus satisfied the first requirement for showing that his 2011 removal order was fundamentally unfair." *Id.* at 1206.

To succeed on a collateral attack of an expedited removal order, Grande must show not only that his due process rights were violated, but also that he was prejudiced by the due process violation. *Barajas-Alvarado*, 655 F.3d at 1088.

3

Grande "need not establish that he definitely would have received immigration relief, but only that he had 'plausible grounds' for receiving such relief." *Id*. at 1089 (quoting *United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998)). The only relief available to Grande was withdrawal of his application for admission. *See id*. at 1089-90; 8 C.F.R. § 1235.4 (stating that the Attorney General may exercise his or her discretion to "permit any alien applicant for admission to withdraw his or her application for admission in lieu of removal proceedings . . . or expedited removal").

We use the six factors from the Inspector's Field Manual used by immigration officials to determine whether it is plausible that a noncitizen would have been granted relief in the form of withdrawal of an application for admission. *Barajas-Alvarado*, 655 F.3d at 1090. Again, Grande's situation closely mirrors that of Raya-Vaca, who we determined had established "a plausible basis for relief." *Raya-Vaca*, 771 F.3d at 1210.

The first factor is neutral: while Grande did not present false documents during his attempt to enter the United States, he had several previous illegal reentries making his immigration violation "relatively serious." *Id.* at 1208. The second factor weighs in favor of Grande because it appears that he had no previous findings of inadmissibility. *Id.* at 1207. Third, like Raya-Vaca, Grande's previous

4

unlawful entries may illustrate his intent to violate the law. *Id.* at 1208. Fourth, Grande "may have had a relatively straightforward path to legal status" because his long-time partner is a United States citizen, "a relevant consideration given the [Field] Manual's instruction to consider all facts and circumstances related to the case." *Id.* (internal quotation marks omitted). The fifth factor weighs against Grande because at the time of the 2011 expedited removal he was 41 years old with no indication of poor health. *Id.* Finally, the sixth factor of humanitarian and public interest considerations weighs heavily in Grande's favor because his long-term partner and their two United States citizen children live in the United States. *See id.* ("There is a compelling humanitarian interest in keeping families united." (internal quotation marks omitted)). Grande also came to the United States when he was six years old where he attended elementary school through high school and then worked full-time at the same company since 1987. Consideration of these factors together suggest it is plausible that Grande would have received immigration relief.

Like Grande, Raya-Vaca had a criminal history. *Id.* at 1198-99. Grande's "misdemeanor criminal history is fairly minimal and does not appear to have much bearing on the plausibility of relief." *Id.* at 1209. Grande has demonstrated that he had a "plausible basis for relief" and thus that he was prejudiced by the entry of the

5

removal order. *Id.* at 1210. Further, "had he known he could withdraw his application, he would have asked to do so in order to preserve his ability to reenter the United States legally by avoiding the bar resulting from a removal order." *Id.*

For the reasons stated above, Grande's 2011 removal order violated his due process rights and he suffered prejudice as a result. Therefore, the 2011 removal order "is invalid and cannot serve as the predicate for [Grande's] conviction under 8 U.S.C. § 1326." *Id.* at 1211. Because we reverse the district court's denial of Grande's motion to dismiss the indictment charging him with illegal reentry due to the invalidity of the underlying removal, we need not address Grande's appeal of the district court's grant of the government's motion to take a second set of fingerprint exemplars.

**REVERSED.**