PREGERSON, Circuit Judge,
dissenting:
I dissent. I would hold that there is a due process right to counsel during expedited removal proceedings.[1]
I. Expedited Removal
Expedited removal — the process in which a noncitizen is removed from the country without a formal removal proceeding — was established in 1996 as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA).[2] The expedited removal process begins and ends with a Customs and Border Protection (CBP) officer. There is no right to appear in front of a judge and no right to hire legal representation. There is no hearing, no neutral decision-maker, no evidentiary findings, and no right to appeal. For these reasons, human rights advocates have criticized expedited removal as a violation of human rights.[3]
Hundreds of thousands of people are expeditiously removed from this country each year. In 2013, the Department of Homeland Security removed approximately 438,000 noncitizens from the U.S.[4] Expedited removals comprised 44% of all removals.[5] An additional 39% of removals were conducted through Reinstatement of *1143 Removal, another fast track procedure established by IIRIRA with similarly nonexistent procedural safeguards.[6] That means that 363,540 people — a staggering 83% of the people removed from the U.S. in 2013 — were removed without a hearing, without a judge, without legal representation, and without the opportunity to apply for most forms of relief from removal.
It is apparent that the expedited removal system is flawed in many ways. The chance to consult with a lawyer, which is the subject of this appeal, is just one way to make the process fair. I would find that such a due process right is mandated under the Constitution.
II. The Mathews v. Eldridge test weighs in favor of a right to counsel.
The three-part test from Mathews is used to determine whether an individual has received due process under the Constitution.[7] Under Mathews, we balance:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[8]
The majority concludes that the Matthews test weighs against establishing a right to counsel in expedited removal proceedings because Peralta-Sanchez’s interest in securing counsel is limited, the government’s interest in having expedited proceedings is high, and there is relatively little risk of error in such proceedings. Maj. Op. 1139.
I disagree. On balance, the Mathews test weighs in favor of finding a right to counsel in expedited removal proceedings.
a. Private interest at stake
The private interest at stake here is significant. An individual subject to expedited removal, like Peralta-Sanchez, “stands to lose the right to stay and live and work in this land of freedom [and] ... the right to rejoin h[is] immediate family, a right that ranks high among the interests of the individual.”[9] Upon removal, noncitizens, like Peralta-Sanchez, may not return to the U.S. for the next five years, sometimes longer, regardless of whether they later seek entry with proper documentation.[10] Allowing CBP officers to render a judgment with such harsh consequences without a hearing and a neutral decision-maker violates the fundamental values of our society.
The majority believes that the interest at stake is more limited because the expedited removal statute targets noncitizens who have no residence or only a limited residence in this country. Maj. Op. 1135-36. Though the statute may have been designed to target individuals with limited or no residence in this country, this is not reality for many individuals subject to expedited removal.[11]
*1144 Expedited removal allows CBP officers to designate thousands of noncitizens who have lived in, worked in, and contributed to our country for many years to be removed without basic procedural safeguards. These are people who have close ties in the U.S. to their families, their spouses, their children and grandchildren. Peralta-Sanchez, for example, moved to the U.S. in 1979 at the age of twenty. For decades, he lived and worked in the United States. His three adult children are U.S. citizens by birth. Like so many others, Peralta-Sanchez’s strong ties to our country did not protect him from expedited removal.
The majority argues that allowing individuals to hire counsel in expedited removal proceedings just because they were apprehended after crossing into the U.S. (as opposed to before entering the U.S.) would create “perverse incentives ... to further circumvent our immigration laws by avoiding designated ports-of-entry.” Maj. Op. 1136. But the perverse incentive argument overlooks the fact that most people come to our country seeking to better their lives and the lives of their families — that is the incentive to reach U.S. soil, not the ability to hire a lawyer in a removal proceeding.
Providing greater procedural safeguards in expedited removal proceedings would not create any additional incentives to enter the country than those that already exist.
b. Erroneous deprivation
Prior to IIRIRA, any individual who sought entry into the U.S. without proper documentation or who violated the terms of his entry visa could present his case to an immigration judge. This allowed for plenary proceedings and the opportunity to be represented by a lawyer. The IIRI-RA stripped away almost all of the procedural safeguards then in place.
Now, the deportation process can begin and end with a CBP officer untrained in the law. Once a CBP officer determines that an individual is inadmissible, the officer will order immediate removal unless the individual expresses a fear of persecution, an intent to apply for asylum, or claims a legal right to reside in the U.S. based on citizenship, permanent residence, asylum, or refugee status.[12] There is no hearing, no neutral decision-maker, no evi-dentiary findings, and no opportunity for administrative or judicial review.[13] This lack of procedural safeguards in expedited removal proceedings creates a substantial risk that noncitizens subjected to expedited removal will suffer an erroneous removal.
Those who are at an obviously higher risk of erroneous deprivation are individuals who claim asylum or who are mentally incompetent.[14] If a person declares to a CBP officer that he fears returning to his country of origin, he is entitled to an interview with an asylum officer to determine whether his fear is credible and legitimate under asylum law.[15] However, researchers *1145 have shown that CBP officers often do not respond to claims for asylum and fail to refer some bona fide asylum seekers to an appropriate asylum officer. In one study, researchers found that 15% of individuals who expressed a fear of returning to their country of origin were removed without being afforded the opportunity to participate in a credible fear interview.[16]
The study also uncovered alarming instances of CBP officers failing to provide even the minimal safeguards available in expedited removals: (1) CBP officers did not read the obligatory paragraph informing noncitizens that U.S. law provides protection to certain persons who face persecution; (2) CBP officers did not specifically inquire about the noncitizen’s fear of returning to his or her country; (3) CBP officers refused interpreters; (4) CBP officers used aggressive or hostile interview techniques, including sarcasm, ridicule, verbal threats, and accusations; and (5) CBP officers told noncitizens to sign documents with little or no explanation of what they were signing or what the implications might be, and in most cases these documents were written in a language the non-citizens were not able to read.[17]
The risk, of erroneous removal is also substantial for individuals who are incompetent due to mental illness or disability. In traditional removal proceedings conducted before an immigration judge, one of the protections afforded noncitizens who exhibit indicia of mental incompetence is the right to counsel.[18] But in expedited removal proceedings, no protections, safeguards, or accommodations are provided to noncitizens with mental illness. The CBP officer does not even conduct competency determinations.[19]
The risk of erroneous deprivation is especially great in this context given that a noncitizen with mental illness or competency issues may not comprehend the nature of the proceedings and may be unable to communicate effectively or answer basic questions about his identity and circumstances. Such an individual may have enormous difficulty in effectively expressing a fear of persecution or rebutting the charge of inadmissibility.[20]
Beyond assessing the risk of erroneous deprivation, the Mathews test also requires us to assess the “probable value, if any, of additional or substitute procedural safeguards.”[21] For individuals who fear persecution in their country of origin or who have competence issues, additional procedural safeguards, especially in the form of the right to counsel, would undoubtedly cure many of the ills that plague expedited removals. Counsel would help clients better understand the charges of inadmissibility and rebut those charges based on individualized arguments. Coun *1146 sel would also advocate for the use of other procedural safeguards, like interpreters, that are too often denied. Counsel would help discover errors in prior removals, which could have a significant impact on a noncitizen’s status or the expedited removal. Simply put, the right to counsel would help ensure that people are not wrongfully removed to their countries of origin to face persecution or death. To me, the probable value of additional safeguards is significant.
c. Government interest
Certainly, allowing lawyers to represent noncitizens in expedited removal proceedings would impose an efficiency cost on the government. However, the government already allows for legal representation in another type of expedited removal under 8 U.S.C. § 1228(b)(4)(B). Thus, the efficiency cost of allowing counsel to participate in expedited removal proceedings does not appear to be prohibitive. More importantly, cost considerations should not have a significant role in determining whether legal counsel should be allowed when lives and fundamental interests are at stake. It is hard to believe that, today, we are willing to pay such a high human price for administrative efficiency.
III. Conclusion
The expedited removal system is flawed; it does not account for the realities of immigration and the strong ties to this country held by many noncitizens. The system is also cruel; it gambles with the lives of hundreds of thousands of people per year by offering few procedural safeguards. We can, and should, do better.[22] I would hold that there is a due process right to counsel in expedited removal proceedings.

. In this case, the right to counsel means the right to hire a lawyer at no cost to the government.

. Expedited removal under 8 U.S.C. § 1225 (not to be confused with expedited removal under 8 U.S.C. § 1228, which applies to persons convicted of aggravated felonies) applies to two types of noncitizens: (1) arriving non-citizens, except for citizens of Cuba arriving by plane; and (2) noncitizens who arrive in, attempt to enter, or have entered the U.S. without having been admitted or paroled at a port-of-entry and who have not established to the satisfaction of a Customs and Border Protection officer that they have been physically present in the U.S. continuously for the two-year period immediately prior to the date of determination of inadmissibility. 8 U.S.C. § 1225(a)(1), (b) (1) (A)(iii) (II); 8 C.F.R. § 235.3(b)(l)(ii).

. See, e.g., ACLU Foundation, American Exile: Rapid Deportations That Bypass the Courtroom (Dec. 2014), available at https://www. aclu.org/files/assets/120214-expedited removaL0.pdf

. John F. Simanski, Dep’t of Homeland Sec. Office of Immigration Statistics, Annual Report: Immigration Enforcement Actions: 2013 1 (Sept. 2014), available at http://www.dhs. gov/sites/default/files/publications/ois_ enforcemen1_ar_2013 .pdf.

. Id.

. Id.

. Noncitizens found within the U.S. are entitled to due process under the Fifth Amendment. United States v. Raya-Vaca, 771 F.3d 1195, 1203 & n.5 (9th Cir. 2014).

. Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

. Landon v. Plasencia, 459 U.S. 21, 34, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) (internal quotation marks and citations omitted); see also Walters v. Reno, 145 F.3d 1032, 1043 (9th Cir. 1998).

. 8U.S.C. § 1182(a)(9)(A)(i).

. Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877-01, 48880 (Aug. 11, 2004) (subjecting to expedited removal noncitizens who are found within 100 miles of the border and who cannot establish that they have been *1144 physically present in the U.S. for the preceding 14 days).

. 8 U.S.C. § 1225(b)(1)(A)(ii), (b)(1)(C); 8 C.F.R. § 235.3(b)(5).

. 8 U.S.C. § 1225(b)(1); 8 C.F.R. § 235.3.

. See Emily Puhl, Prosecuting the Persecuted: How Operation Streamline and Expedited Removal Violate Article 31 of the Convention on the Status of Refugees and 1967 Protocol, 25 Berkeley La Raza L.J. 87 (2015); Aimee L. Mayer-Salins, Fast-Track to Injustice: Rapidly Deporting the Mentally III, 14 Cardozo Pub. L. Pol’y & Ethics J. 545 (2016).

. 8 C.F.R. § 235.3(b)(4); 8 C.F.R. § 208.30.

. Allen Keller, M.D. et al., Evaluation of Credible Fear Referral in Expedited Removal at Ports of Entry in the United States, Report on Asylum Seekers in Expedited Removal: Volume II: Expert Reports 1, 20 (Feb. 2005), available at https://www.uscirf.gov/sites/ default/files/resources/stories/pdf/asylum_ seekers/evalCredibleFear.pdf.

. Id. at 28-31.

. See Matter of M-A-M-, 25 I. & N. Dec. 474 (BIA 2011); Franco-Gonzalez v. Holder, No. CV 10-02211, 2013 WL 3674492 (C.D. Cal. Apr. 23, 2013).

. Mayer-Salins, supra n.14, at 558.

. See, e.g., Renata Robertson, The Right to Court-Appointed Counsel in Removal Proceedings: An End to Wrongful Detention and Deportation of U.S. Citizens, 15 Scholar: St. Mary’s L. Rev. & Soc. Just. 567, 582 (2013) (discussing the case of Sharon McKnight, a mentally disabled U.S. citizen, who was wrongly removed to Jamaica).

. 424 U.S. at 335, 96 S.Ct. 893.

. See United States v. Otherson, 637 F.2d 1276, 1285 (9th Cir. 1980) (Pregerson, J., Ferguson, J., Norris, J.) ("The message of this case is clear. So long as the American flag flies over the United States courthouses, the federal courts and the federal justice system stand as bulwarks to assure that every human being within the jurisdiction of the United States shall be treated humanely and dealt with in accordance with due process of law by those entrusted with the power to enforce the law.”).