**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-10454 |
| Plaintiff-Appellee, | D.C. No. 4:15-cr-01731-JGZ-LCK-1 |
| v. | |
| JOSE SERGIO CALDERON-ANDRADE, AKA Jose Calderon-Andrade, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, District Judge, Presiding

Submitted October 17, 2018**
San Francisco, California

Before: THOMAS, Chief Judge, and KLEINFELD and GRABER, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Jose Sergio Calderon-Andrade ("Calderon") appeals from his conviction for illegal re-entry in violation of 8 U.S.C. § 1326(a). We have jurisdiction pursuant to 28 U.S.C. § 1291. We AFFIRM.

On April 13, 1998, Calderon, a lawful permanent resident, was detained by border patrol under the alias Antonio Andrade-Calderon ("Andrade") in Arizona. Calderon was caught driving a U-Haul truck containing 19 undocumented aliens. After apprehension, Calderon repeatedly told border patrol agents that he was "a Mexican citizen who does not have immigration documents to be in, pass through, or reside in the United States legally." He also signed documents to the same effect, using the name Andrade.

On May 4, 1998, "Andrade" (really Calderon-Andrade) appeared at a group removal hearing. The immigration judge informed the group, inter alia, that they had a right to counsel, that one purpose of the hearing was to determine their eligibility for relief from removal, and that they could appeal his decision. "Andrade" stated he understood his rights, and affirmed he was guilty of entering the United States illegally without inspection. "Andrade" did not reveal his true identity or say that he was a lawful permanent resident. "Andrade" was ordered removed, and did not appeal the decision (the "1998 Order").

2

On August 31, 2015, Calderon was arrested under his real name, and later indicted for illegal re-entry pursuant to 8 U.S.C. § 1326(a), enhanced by § 1326(b). Immigration services had previously discovered that Calderon was also "Andrade," following an arrest after the entry of the 1998 Order. The 1998 Order was reinstated after each later arrest.

Calderon moved to dismiss the indictment, arguing that his status as a lawful permanent resident afforded him greater protections than those he was granted leading up to the 1998 Order. The district court rejected this argument, ruling that any due process violation—if any occurred—was the product of Calderon's own affirmative misrepresentations. After the denial of his motion to dismiss, Calderon pleaded guilty but reserved the right to appeal the due process decision. This timely appeal follows.

We review de novo a denial of a motion to dismiss an 8 U.S.C. § 1326(a) indictment when the motion is based on "alleged due process defects in the underlying [removal] proceeding." United States v. Raya-Vaca, 771 F.3d 1195, 1201 (9th Cir. 2014) (original brackets omitted) (quoting United States v. Camacho-Lopez, 450 F.3d 928, 929 (9th Cir. 2006)). The district court's findings of fact are reviewed for clear error. Id. Because a prior order of removal is a predicate element of 8 U.S.C. § 1326, a defendant may collaterally attack the

underlying removal order.[1]  United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047 (9th Cir. 2004).  To sustain a collateral attack, a defendant must make three showings: (1) exhaustion of administrative remedies; (2) improper deprivation of judicial review; and (3) that the removal order was "fundamentally unfair."  8 U.S.C. § 1326(d).  A removal order may be considered fundamentally unfair if "the deportation proceeding violated the alien's due process rights and the alien suffered prejudice as a result."  United States v. Arias-Ordonez, 597 F.3d 972, 976 (9th Cir. 2010).

We understand Calderon to be making two related yet distinct arguments in collaterally attacking the 1998 Order.  First, Calderon contends that the 1998 Order and the later reinstatements are invalid for failing to consider his true legal status.  Second, Calderon contends that the immigration judge failed to develop the record and raise the possibility of cancellation of removal—a remedy available to qualifying permanent residents.  Both arguments are unpersuasive.

---

[1] Calderon does not argue that the reinstatements failed to satisfy any necessary procedural requirements.  See United States v. Arias-Ordonez, 597 F.3d 972, 979 (9th Cir. 2010) ("[W]e described reinstatement as a 'narrow and mechanical' process, involving only three simple inquiries: (1) verifying the identity of the alien; (2) obtaining the prior order of removal; and (3) determining whether the alien reentered the United States illegally.").

Calderon's arguments are premised on an untenable theory—that lawful permanent residents should benefit from <u>successful</u> misrepresentations to immigration officials. Had Calderon been truthful, the immigration judge would have been bound to consider his true legal status, raise the possibility of cancellation of removal, and provide other protections afforded to permanent residents. 8 U.S.C. §§ 1227, 1229b(a); <u>United States v. Ochoa-Oregel</u>, 904 F.3d 682, 685 (9th Cir. 2018). Any inadequacies in the processes leading up to the 1998 Order are the fault of Calderon alone. <u>See</u> <u>United States v. Lopez-Velasquez</u>, 629 F.3d 894, 900 (9th Cir. 2010) (holding that immigration judges are not expected to be "clairvoyant" and that an alien or some other person must present evidence indicating that the alien is eligible for relief); <u>cf.</u> <u>Ochoa-Oregel</u>, 904 F.3d at 685 (holding that a permanent resident could not be "stripped of important legal entitlements" derived from permanent resident status where there was "<u>no meaningful opportunity to contest</u>" (emphasis added)). Calderon did not intend to benefit from his permanent resident status, and the record suggests that he intentionally posed as an undocumented alien <u>to protect</u> his legal status. Under

these circumstances, Calderon can neither establish violations of due process nor prejudice.[2]

**AFFIRMED.**

---

[2] Calderon also fails to satisfy the exhaustion and judicial review prongs, as his arguments are derivative of his reasoning as to fundamental unfairness.