**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

GONZALO VASQUEZ-
GONZALEZ, AKA Gonzalo
Vasquez-Gonzalez,
*Defendant-Appellant.*

No. 15-10285

D.C. No.
5:14-cr-00291-EJD-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Submission Deferred November 15, 2016[*]
Re-submitted August 22, 2018
San Francisco, California

Filed August 22, 2018

Before: J. Clifford Wallace, Richard R. Clifton,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Clifton

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

**SUMMARY**[**]

---

### Criminal Law

The panel affirmed a conviction for illegal reentry in a case in which the defendant brought two collateral attacks on his underlying removal.

The panel rejected the defendant's contention that his removal was invalid because it was based on a conviction that was not a crime of violence within the meaning of 18 U.S.C. § 16. The panel held that assault with a deadly weapon or instrument other than a firearm or by means of force likely to produce great bodily injury under Calif. Penal Code § 245(a)(1), as it was written prior to its amendment in 2011, categorically qualifies as a conviction for a "crime of violence" within the meaning of 18 U.S.C. § 16(a). Rejecting the defendant's argument that § 245(a)(1) can be satisfied by negligent conduct, the panel concluded that the California statute requires an intentional use of force.

Because the defendant has not shown that it was plausible that he would have been granted discretionary relief from removal pursuant to Section 212(c) of the Immigration and Nationality Act, the panel rejected the defendant's challenge to the validity of his removal based on the immigration judge's failure to inform him of his eligibility for such discretionary relief at the time of his deportation.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Robert Carlin and Lara S. Vinnard, Assistant Federal Public Defenders; Steven G. Kalar, Federal Public Defender; Office of the Federal Public Defender, San Jose, California, for Defendant-Appellant.

Meredith B. Osborn and Kirstin M. Ault, Assistant United States Attorneys; J. Douglas Wilson, Chief, Appellate Division; Alex G. Tse, Acting United States Attorney; United States Attorney's Office, San Francisco, California; for Plaintiff-Appellee.

## OPINION

CLIFTON, Circuit Judge:

This case presents the question whether a conviction for assault with a deadly weapon or instrument other than a firearm or by means of force likely to produce great bodily injury under California Penal Code § 245(a)(1), as it was written prior to its amendment in 2011, qualifies as a conviction for a "crime of violence" within the meaning of 18 U.S.C. § 16(a). We hold that it does.

Gonzalo Vasquez-Gonzalez, a citizen of Mexico, was convicted under § 245(a)(1) in 1995. He was removed from the United States because that conviction was determined to be a crime of violence. He later returned to the United States and was eventually convicted of illegal reentry in violation of 8 U.S.C. § 1326. He now appeals that illegal reentry conviction.

A valid removal order is a predicate element of a conviction for illegal reentry under § 1326. A defendant may therefore challenge a conviction for illegal reentry by collaterally attacking his underlying removal. Vasquez brings two collateral attacks on his removal. In his first collateral attack, he argues that his removal was invalid because his California conviction was not a crime of violence within the meaning of 18 U.S.C. § 16. Section 16 contains two subsections, (a) and (b), and the Supreme Court held § 16(b) void for vagueness in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). Thus, we must look only to § 16(a) in determining whether Vasquez's conviction was for a crime of violence. We conclude that his prior conviction was for a crime of violence under § 16(a).

In his second collateral attack, Vasquez argues that he was eligible for discretionary relief from removal at the time of his deportation and that the immigration judge failed to inform him of that eligibility. The failure to inform Vasquez of his eligibility for relief can serve as a basis to collaterally attack a removal order if Vasquez can establish that it was plausible that he would have been granted relief from removal. Based on the facts of his case, however, we conclude that it is not plausible that he would have been granted relief at the time of his removal.

We affirm Vasquez's conviction for illegal reentry.

## I.  Background

Vasquez was brought by his mother to the United States when he was five years old, and he became a legal permanent resident when he was fourteen. He graduated from high school in 1993.

In 1994, Vasquez was arrested for felony grand theft from a person. The same day, he was arrested for misdemeanor battery arising out of a separate incident with a different victim. He was convicted of both crimes and sentenced to 180 days of imprisonment and 36 months of probation. Just over six months after his conviction, Vasquez stabbed a man on the street after stealing two bottles of beer from him. He was convicted of assault with a deadly weapon pursuant to California Penal Code § 245(a)(1), and he was sentenced to four years of imprisonment.

While incarcerated, Vasquez was involved in eight gang-related fights, and he was found guilty of being in possession of a stabbing instrument. According to Vasquez, the guards at Corcoran State Prison forced him to fight other inmates. He acknowledges, though, that he was charged with involvement in a fight before his transfer to Corcoran. He also admits that two fights and the charge for weapons possession occurred after he was transferred away from Corcoran.

In 1998, while Vasquez was in prison, he was placed in removal proceedings following the issuance of a notice to appear which alleged that he was removable under the Immigration and Nationality Act (INA) for being convicted of an aggravated felony. Vasquez was removed to Mexico on September 7, 1999. He re-entered the United States without inspection or permission thirteen days later. After his re-entry, Vasquez worked full-time as a furniture deliveryman and furniture assembler. He also helped to raise two daughters, a biological daughter who is now 17 and a step-daughter who is now 21.

On May 13, 2014, Vasquez was charged with one count of violating 8 U.S.C. § 1326 by illegally reentering the United States. Prior to his charge for illegal reentry, Vasquez had not been charged with any crime since his arrests in 1994.

Vasquez filed a motion to dismiss the information, arguing that the 1999 removal order was invalid because the immigration judge failed to advise him that he was eligible for relief from removal under former section 212(c) of the INA. The district court denied the motion, and Vasquez was convicted of illegal reentry following a stipulated facts bench trial. Vasquez was sentenced to 15 months of imprisonment and a three-year term of supervised release.[1]

## II. Discussion

"We review de novo the denial of a motion to dismiss an indictment under 8 U.S.C. § 1326 when the motion is based on alleged due process defects in an underlying deportation proceeding." *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014) (citation omitted).

## A. California Penal Code § 245(a)(1)

Vasquez challenges the validity of his underlying removal order. "A defendant charged with illegal reentry pursuant to 8 U.S.C. § 1326 has the right to bring a collateral attack challenging the validity of his underlying removal order, because that order serves as a predicate element of his

---

[1] Vasquez may have finished his term of imprisonment and his period of supervised release. His case is not moot even if he has, because courts "presume that a wrongful criminal conviction has continuing collateral consequences." *Spencer v. Kemna*, 523 U.S. 1, 8 (1998).

conviction." *United States v. Ochoa*, 861 F.3d 1010, 1014 (9th Cir. 2017) (citations omitted); *see also United States v. Martinez*, 786 F.3d 1227, 1230 (9th Cir. 2015).

Under the INA, an alien is removable if he "is convicted of an aggravated felony at any time after admission." 8 U.S.C. § 1227(a)(2)(A)(iii). An aggravated felony includes a "crime of violence" as defined by 18 U.S.C. § 16. *See* 8 U.S.C. §§ 1101(a)(43)(F). Vasquez was removed because his California conviction was determined to be a crime of violence under § 16. He argues now that his removal order was invalid because his conviction did not qualify as a crime of violence.

To determine whether Vasquez's state law conviction qualifies as a crime of violence, we apply the categorical approach laid out in *Taylor v. United States*, 495 U.S. 575 (1990). *See Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1125 (9th Cir. 2006) (en banc). The categorical approach requires us to compare the elements of the state statute of conviction to the elements of the generic federal crime, and then to determine whether the full range of conduct covered by the state statute falls within the conduct covered by the federal statute. *Suazo Perez v. Mukasey*, 512 F.3d 1222, 1225 (9th Cir. 2008).[2]

---

[2] In front of the district court, Vasquez did not argue that his prior conviction was not categorically a crime of violence. Normally, a party waives an issue by failing to raise it with the district court, but an issue subject to waiver may be addressed, even on appeal, where good cause is shown for the party's failure to raise the argument earlier. *United States v. Aguilera-Rios*, 769 F.3d 626, 630 (9th Cir. 2014). Vasquez's argument is premised on our opinion in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), which was affirmed by the Supreme Court in *Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018). Vasquez was convicted of illegal reentry

Vasquez was convicted for violating California Penal Code § 245(a)(1). At the time of Vasquez's conviction, that statute provided punishment for:

> Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury.

1993 Cal. Stat. 2168 (formerly codified at Cal. Penal Code § 245(a)(1)).

The term "crime of violence" is defined in § 16 as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

The Supreme Court held that § 16(b) is void for vagueness in *Dimaya*. *See Dimaya*, 138 S. Ct. at 1223. That holding is retroactive to Vasquez's removal. *See Aguilera-*

---

before we published the first *Dimaya* opinion. Accordingly, Vasquez had good cause not to raise the argument earlier.

*Rios*, 769 F.3d at 633 (when challenging a conviction for illegal re-entry, a court's decision is retroactive to the time of removal if it invalidates the basis for removal).  We must therefore consider whether the full range of conduct covered by the California statute falls within the definition provided in § 16(a).

We have previously concluded that a conviction for violation of California Penal Code § 245(a)(1) is categorically a crime of violence for federal sentencing purposes.  *United States v. Grajeda*, 581 F.3d 1186 (9th Cir. 2009); *see also United States v. Jimenez-Arzate*, 781 F.3d 1062, 1065 (9th Cir. 2015).  In doing so, we relied on our opinion in *United States v. Heron-Salinas*, 566 F.3d 898 (9th Cir. 2009), in which we held that assault with a firearm under California Penal Code § 245(a)(2) is categorically a crime of violence under 18 U.S.C. § 16. *See Grajeda*, 581 F.3d at 1195–97 (discussing *Heron-Salinas*).  Our analysis in *Heron-Salinas* referred to language contained in both subsections of § 16, both (a) and (b), so it arguably relied, at least in part, on the language of § 16(b). *Heron-Salinas*, 566 F.3d at 899.  As § 16(b) has since been held void, we revisit the question to determine whether our past holdings remain valid. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (discussing circumstances in which a three-judge panel of this court may conclude that our prior precedent is no longer valid).

Vasquez argues that the mens rea requirements for the two statutes are not a categorical match.[3]  According to

---

[3] Vasquez also argues, in passing, that the actus reas requirements of the two statutes are not a categorical match.  We disagree.  The "force necessary to constitute a crime of violence under 18 U.S.C. § 16(a) must

Vasquez, § 16(a) requires an intentional use of force and the California statute can be satisfied by unintentional conduct.

Vasquez is correct that § 16(a) requires an intentional use of force. In *Leocal v. Ashcroft*, the Supreme Court explained that § 16(a) encompasses "a category of violent, active crimes." *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004). Accordingly, the Court held that § 16(a) requires "a higher degree of intent than negligent or merely accidental conduct." *Id.* at 9. In *Fernandez-Ruiz v. Gonzales*, our court, sitting en banc, held that § 16(a) requires "the intentional use of force against the person or property of another." *Fernandez-Ruiz*, 466 F.3d at 1132. We explained that reckless[4] or grossly negligent conduct is not enough to meet the mens rea requirement of § 16(a). *Id.*

Vasquez argues that § 245(a)(1) can be satisfied by negligent, and therefore unintentional, conduct. There, however, we disagree. Section 245(a)(1) is an assault statute, and the Supreme Court of California has expressly stated that the mens rea for assault in California requires more than negligent conduct. *People v. Williams*, 26 Cal. 4th 779, 788 (2001) ("mere recklessness or criminal negligence is still not

---

be violent in nature." *Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1016 (9th Cir. 2006) (brackets omitted) (quoting *Singh v. Ashcroft*, 386 F.3d 1228, 1233 (9th Cir. 2004)). As we explained in *Grajeda*, § 245(a)(1) requires force that is violent in nature. *Grajeda*, 581 F.3d at 1191–92.

[4] In a different context, the Supreme Court later held that reckless assault implies intentional conduct. *Voisine v. United States*, 136 S.Ct. 2272, 2278–80 (2016). We do not need to revisit the recklessness issue to decide this case because, as discussed here, assault in California requires more than recklessness. *People v. Williams*, 26 Cal. 4th 779, 788 (2001).

enough"). Instead, assault in California requires an intent to commit a battery. *Id.* at 787 (A "defendant is only guilty of assault if he intends to commit an act which would be indictable as a battery . . . ." (internal quotation marks and alterations omitted)).

Vasquez seizes on language regarding probability used by the California Supreme Court in *Williams*. For example, the court explained that "assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will *probably* and directly result in the application of physical force against another." *Id.* at 790 (emphasis added). According to Vasquez, this probabilistic language defines a negligence mens rea.

As explained above, however, the California Supreme Court expressly rejected the conclusion that the mens rea for assault could be satisfied by negligent or reckless conduct.[5] *Id.* at 788. Thus, the probabilistic language does not establish a negligence standard for assault in California. Instead, the court used probabilistic language because assault is an inchoate crime. *Id.* at 787 ("Because assault criminalizes

---

[5] Vasquez does not address the California Supreme Court's statement that negligent conduct is not enough for assault in California. Instead, he argues that the language of *Williams* sets forth a negligence mens rea as defined by *Elonis v. United States*, 135 S. Ct. 2001, 2011 (2015). But the Court in *Elonis* did not discuss *Williams*, nor did it discuss the mens rea for assault. Instead, the Court construed a federal threats statute, holding that a negligence standard was insufficient to meet that statute's mens rea requirement. *Id.* at 2012. The only relevant portion of *Elonis* is the observation that a "reasonable person" standard is a negligence standard. *Id.* But here, we are not dealing with a simple reasonable person standard. Here, the statute requires an intent to commit a battery, and we have been expressly told by the California Supreme Court that negligence is not enough.

conduct based on what *might* have happened—and not what *actually* happened—the mental state for assault incorporates the language of probability, i.e., direct, natural and probable consequences."). The use of the word "probably" did not suggest that the defendant did not intend the action, but reflects that the actual outcome of the action might not be certain.[6]

The essential question is whether assault in California can be committed accidently or whether it requires an intentional use of force. As defined in California, assault "requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." *Id.* at 790. We conclude that this definition requires an intentional use of force.[7] Thus, because assault in

---

[6] Vasquez argues that California prosecutes negligent and reckless conduct under § 245, but we are not persuaded. He cites California Criminal Jury Instruction 875, but that instruction is consistent with the Supreme Court of California's opinion in *Williams*. Even if it were inconsistent, we would take our direction from the decisions of the State's highest court. Likewise, although Vasquez is correct that a California Court of Appeal criticized *Williams*, we follow the Supreme Court of California. *See People v. Wright*, 100 Cal. App. 4th 703, 706 (Cal. Ct. App. 2002) (criticizing *Williams*). The other cases cited by Vasquez are not on point. In *People v. Patzer*, the jury was instructed that the conviction required criminal intent, not merely negligence or recklessness. 2008 WL 4958659 at \*5 (Cal. Ct. App. 2008). And in *Jimenez-Arzate* and *Ramirez v. Lynch*, there is nothing in the dispositions to indicate that § 245 was applied to unintentional conduct. *Jimenez-Arzate*, 781 F.3d 1062; *Ramirez v. Lynch*, 628 F. App'x 506 (9th Cir. 2016).

[7] Vasquez argues that we held the mens rea for § 245 to require less than intentional conduct in *Ceron v. Holder*, 747 F.3d 773 (9th Cir. 2014) (en banc). But we have already rejected that interpretation of *Ceron*. *See Jimenez-Arzate*, 781 F.3d at 1065.

California requires an intentional use of force, assault in California satisfies the mens rea requirement for § 16(a). Accordingly, we hold, consistent with our decisions in the earlier cases cited above, that from its enactment in 1993 to its amendment in 2011, California Penal Code § 245(a)(1) was categorically a crime of violence as defined in 18 U.S.C. § 16(a).[8]

## B.   Immigration and Nationality Act § 212(c)

At the time of his removal, Vasquez was eligible for a discretionary waiver of removal under former section 212(c) of the INA.[9] An immigration judge (IJ) is obligated to inform an alien of his apparent eligibility for a discretionary waiver. 8 C.F.R. § 1240.11(a)(2); see also United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000). Vasquez contends that the IJ failed to inform him of his eligibility for a potential waiver, and the government does not argue otherwise.

An IJ's failure to inform an alien of his apparent eligibility for a discretionary waiver can serve as the basis for a collateral attack on the underlying removal order under

---

[8] In 2011, the words "any means of force likely to produce great bodily injury" were removed from § 245(a)(1), and they were relocated to a newly-created subsection (a)(4). 2011 Cal. Stat. 2287. The reorganized version of the statute is not before us.

[9] At the time of Vasquez's removal, former section 212(c) of the INA authorized permanent resident aliens to apply for discretionary waiver from removal. 8 U.S.C. § 1182(c) (1995); see Ayala-Chavez v. INS, 944 F.2d 638, 640 n.2 (9th Cir.1991). An alien convicted of an aggravated felony could apply for relief if his term of imprisonment was less than five years. Vasquez's sentence was for four years, so he was eligible for relief under section 212(c). The government does not argue otherwise.

8 U.S.C. § 1326(d). *See United States v. Valdez-Novoa*, 780 F.3d 906, 913 (9th Cir. 2015). Vasquez must show prejudice in order to successfully attack the validity of his underlying deportation. *See United States v. Rojas-Pedroza*, 716 F.3d 1253, 1262 (9th Cir. 2013). To demonstrate the requisite prejudice, Vasquez must "show[] that it is plausible, rather than merely conceivable or possible, that an IJ would have granted the relief for which he was apparently eligible." *Valdez-Novoa*, 780 F.3d at 914. A showing of plausibility does not require a defendant to prove that relief was "probable." *United States v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014). In other words, Vasquez "need not show that he definitely would have received immigration relief." *Id.* (internal quotation marks omitted).

"To assess whether a defendant has shown that he would plausibly have been granted a discretionary form of relief from removal, we follow a two-step process." *Id.* at 1206 (citation omitted). "First, we identify the factors relevant to the agency's exercise of discretion for the relief being sought." *Id.* (internal quotation marks and alterations omitted). Second, "we determine whether, in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the defendant's own case, it was plausible that the agency official considering the defendant's case would have granted relief from removal." *Id.* (internal quotation marks and alterations omitted).

At the time of Vasquez's removal, the Board of Immigration Appeals had enunciated numerous factors to be considered in determining whether or not to grant section 212(c) relief. *Yepes-Prado v. U.S. I.N.S.*, 10 F.3d 1363, 1366 (9th Cir. 1993). Favorable considerations included: 1) family ties within the United States; 2) residence of long duration in

this country (particularly when residence began at a young age); 3) hardship to the petitioner or petitioner's family if relief is not granted; 4) service in the United States armed forces; 5) a history of employment; 6) the existence of business or property ties; 7) evidence of value and service to the community; 8) proof of rehabilitation if a criminal record exists; 9) other evidence attesting to good character. *Id.* (citation omitted).

Adverse factors included: 1) the nature and underlying circumstances of the exclusion or deportation ground at issue; 2) additional violations of the immigration laws; 3) the existence, seriousness, and recency of any criminal record; 4) other evidence of bad character or the undesirability of the applicant as a permanent resident. *Id.* (citation omitted).

Furthermore, "[w]here a 212(c) petitioner has committed a particularly grave criminal offense, he must make a heightened showing that his case presents unusual or outstanding equities to warrant discretionary relief." *Id.* "[S]uch a showing may be mandated because of a single serious crime, or because of a succession of criminal acts which together establish a pattern of serious criminal misconduct." *Matter of Edwards*, 20 I. & N. Dec. 191, 195–96 (BIA 1990).

We conclude that Vasquez would have been required to make a heightened showing of unusual or outstanding equities to warrant discretionary relief from removal. As detailed above, Vasquez compiled an unfortunate record as a young adult, starting at age 19 when he was convicted of felony grand theft from a person and misdemeanor battery, two separate crimes committed upon different victims. Later that year, while still on probation for his prior convictions, he

stabbed a man in the stomach after stealing two bottles of beer from him, resulting in the conviction under California Penal Code § 245(a)(1) discussed above.

A stabbing is a "single serious crime."  Likewise, a stabbing, a felony grand theft, and a misdemeanor battery constitute a "pattern of serious criminal misconduct" when those crimes were all committed within one year of each other.[10]  *See United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1057 (9th Cir. 2003) (heightened showing required where defendant was convicted of lewd acts on a child, spousal abuse, and resisting arrest).  Vasquez does not point to any cases in which a court has looked at similarly serious conduct and expressly declined to apply the requirement of a heightened showing.

We conclude that Vasquez would not have nearly met the burden of a heightened showing at the time of his deportation in 1999.  The equities in Vasquez's favor would have included his family ties within the United States and the fact that he had been brought to this country at a young age. *See Yepes-Prado*, 10 F.3d at 1366.  Vasquez has not demonstrated any other potentially positive equities.  He did not serve in the armed forces, and he had no business or property ties.  He argues that he worked after graduating high school, but given that he was convicted at age 19, his employment history could not have been substantial.  He argues that he was a

---

[10] While incarcerated for the stabbing, Vasquez was involved in eight gang-related fights, and he was found guilty of being in possession of a stabbing instrument.  This conduct could also support the requirement of a heightened showing, but it is not necessary to our conclusion.  His convictions are enough.  Given that his convictions are enough, we do not address Vasquez's arguments regarding his prison conduct.

value to the community because he graduated high school and played sports while there, but that did not establish value to the community as an adult, and his criminal conduct started very soon after graduation.  Vasquez offers no specific evidence of rehabilitation or good character that he could have presented to the IJ at the time of his removal.

While Vasquez argues that his family will suffer hardship without him, his family circumstances were different when he was deported in 1999.  Our role is to determine whether Vasquez would plausibly have been granted a discretionary waiver at the time of his removal.  Thus, we may only consider the facts as they would have been when the IJ considered Vasquez's case.  At that time, Vasquez was not supporting his family because he had been incarcerated for four years.  He may have provided some support prior to his incarceration, but speculation about that prior support would not have constituted a heightened showing of unusual or outstanding equities at the time of Vasquez's deportation.

Vasquez cites a declaration by an immigration attorney filed on his behalf.  The attorney declared that, in her opinion, Vasquez would have had a high probability of being granted relief under section 212(c) at the time of his removal.  The attorney cites some cases in her declaration, but she does not discuss any case in which an alien was convicted of three crimes within a year, one of which was a stabbing.  The declaration does not persuade us that it was plausible that Vasquez would have been granted a discretionary form of relief from removal.

Vasquez also cites the Supreme Court's opinion in *INS v. St. Cyr* for the statistic that between 1989 and 1995, 51.5 percent of applications for relief were granted under

section 212(c). *INS v. St. Cyr*, 533 U.S. 289, 296 n.5 (2001). We may consider statistical evidence in analyzing the plausibility of relief, but statistics alone are not enough. *Raya-Vaca*, 771 F.3d at 1209. We find this statistic in particular to be of little help to Vasquez. The statistic does not capture the correct time frame because Vasquez was not removed until 1999. More importantly, the statistic does not distinguish between aliens whose criminal histories required them to make a heightened showing of equities versus those not required to make such a showing. Given these limitations, the statistic does not persuade us that it was plausible that Vasquez would have been granted relief.

## III.    Conclusion

From its enactment in 1993 to its amendment in 2011, California Penal Code § 245(a)(1) was categorically a crime of violence as defined in 18 U.S.C. § 16(a). Gonzalo Vasquez-Gonzalez has not shown that it was plausible he would have been granted discretionary relief from removal pursuant to former INA section 212(c). Therefore, neither of Vasquez's collateral attacks succeed.

**AFFIRMED.**