Filed 10/31/24  P. v. De Leon CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br>    Plaintiff and Respondent,<br>v.<br>JONATHAN MISAEL DE LEON,<br>    Defendant and Appellant. | A169119<br><br>(Solano County<br>Super. Ct. No. VCR237685) |

In 2021, defendant Jonathan Misael De Leon entered a no contest plea to a charge of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)).[1] He was sentenced to three years in prison.  He later filed a motion under section 1473.7, subdivision (a)(1) to vacate his conviction and withdraw his plea, contending he did not understand the immigration consequences of the plea.  The trial court denied the motion, and De Leon appeals, arguing he met his burden to establish eligibility for relief under section 1473.7.  We affirm.

## I. BACKGROUND

### A. *De Leon's 2021 No Contest Plea*

On May 4, 2021, De Leon was charged by complaint with assault with a deadly weapon (§ 245, subd. (a)(1)).  Among the charges was an allegation

_____

[1] Undesignated statutory references are to the Penal Code.

1

that he personally inflicted great bodily injury on the victim (referred to by his initials, T.V.) (§ 12022.7, subd. (a)).  The incident underlying the charge occurred on March 21, 2021, when De Leon drove himself and two friends to a wheel and tire shop to have the tires on his car realigned.[2]  De Leon and his friends appeared to be drunk.  After T.V. completed the work, De Leon complained that the wheels had not been aligned properly.  One of De Leon's friends told T.V., " 'If the car is not aligned, I will punch you in the face.' " T.V. then told De Leon and his friends to leave the shop or T.V. would call the police.  De Leon told T.V., " 'Stop being a little bitch.' "

T.V. went into the shop's office to call the police.  De Leon and his companions followed and, once inside, threw objects around the office and punched T.V. in the face and head about 10 times.  The shop's owner called 911, causing De Leon and his friends to flee.  As De Leon backed his car out of the driveway, T.V. threw a small garbage can at the car.  De Leon then put the car in drive and " 'floored it' " forward toward T.V., striking him and pinning his foot between the car and the alignment machine.  De Leon and his friends got out of the car and fled on foot.

T.V. sustained injuries to his foot and ankle.  Witness statements and video surveillance footage corroborated T.V.'s statement about the incident. De Leon initially denied being at the shop.  After being shown the surveillance footage, he admitted being at the shop but denied driving the car.  De Leon later admitted being in the driver's seat when the car struck

---

[2] In their briefing in this appeal, the parties derive their summaries of the underlying incident from the prosecution's trial court brief opposing De Leon's motion to vacate his conviction and from the probation report, both of which summarize the police report.  At De Leon's plea hearing, the parties stipulated that the police report provided a factual basis for his no contest plea.

T.V. but said someone else had depressed the accelerator pedal. De Leon's blood-alcohol content was 0.07 percent about three hours after the incident.

On December 9, 2021, De Leon entered a plea of no contest to the assault with a deadly weapon charge, in exchange for dismissal of the great bodily injury enhancement and a stipulated three-year midterm sentence for the assault charge. De Leon signed a waiver of rights and change of plea form, on which he initialed various advisements, including an immigration advisement that read: "If I am not a citizen of the United States, a conviction of this offense to which I am now entering a plea may, and with certain offenses will, result in my deportation from this country, exclusion from admission to the United States, and/or a denial of naturalization pursuant to the laws of the United States. If represented by an attorney, I have discussed this with my attorney and I know whether or not conviction for this offense requires mandatory deportation and exclusion." De Leon also agreed that he had discussed the plea form with his attorney, initialing the statement, "I declare that my attorney has reviewed and explained this document to me, and I hereby freely and voluntarily, having full knowledge and understanding of the rights that I am giving up and the possible consequences which may result from my plea, do hereby request the Court to accept my new and different plea(s)."

De Leon's then-counsel, Sean Swartz, signed the plea form, confirming that he had reviewed and explained it to De Leon and had "adequately researched and advised [him] as to the immigration consequences of this plea." The statement signed by Swartz also confirmed that, based on his conversation with De Leon, he was satisfied that De Leon's plea was freely and voluntarily made; De Leon understood the consequences of his plea; and De Leon's decision to plead no contest "was made only after a full discussion

with [Swartz] of the facts and the law of this case; the possible defenses, and the consequences of the plea."

At the plea hearing, the trial court (Hon. Daniel Healy) questioned De Leon about the plea form. De Leon confirmed that the signature and initials on the form were his, and that he had read the form and discussed it with his counsel before signing it. The court then asked: "And do you understand all the rights you have to a trial that you [are] willing[ly] waiving by signing this form?" De Leon responded: "Yes, your Honor." The court stated: "So the agreement here is you're entering a plea that's going to result in you being sentenced to the state prison for three years. The enhancement is being dismissed. So you're avoiding up to seven it sounds like. That's the main promise. Understood?" De Leon again responded: "Yes, your Honor." The court then accepted De Leon's no contest plea, finding that he had been fully informed of his rights and had knowingly, intelligently, and voluntarily waived them.

On February 17, 2022, consistent with the plea agreement, the trial court (Judge Healy) sentenced De Leon to the middle term of three years in prison.

## B. *De Leon's 2023 Motion To Vacate His Conviction and Withdraw His Plea*

On August 4, 2023, De Leon (through new counsel) filed a motion under section 1473.7 to vacate his conviction and withdraw his plea. In the motion and in a supporting declaration, De Leon stated that, when he entered his plea, he did not meaningfully understand the immigration consequences of the plea. De Leon asserted that Swartz did not advise him of the consequences. De Leon stated that, in February 2023, he received from

4

immigration authorities a notice to appear that alleged he was deportable based on his conviction of an aggravated felony.[3]

In his declaration, De Leon stated he was born in Guatemala and moved to the United States with his father in 1997 when he was about seven years old. He became a legal permanent resident in 2008. Since moving to

_____

[3] Under federal immigration law, "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." (8 U.S.C. § 1227(a)(2)(A)(iii).) An aggravated felony includes a "crime of violence" as defined in title 18 United States Code section 16, if the term of imprisonment is at least one year. (8 U.S.C. § 1101(a)(43)(F); *United States v. Vasquez-Gonzalez* (9th Cir. 2018) 901 F.3d 1060, 1065.) And in turn, a "crime of violence" for these purposes is "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." (18 U.S.C. § 16(a).)

In their appellate briefs, both parties state that, under case law from the United States Court of Appeals for the Ninth Circuit, a conviction of assault with a deadly weapon under section 245, subdivision (a)(1)— De Leon's crime of conviction here—is a crime of violence and an aggravated felony for purposes of federal law if, as occurred here, the defendant is sentenced to at least one year in prison. (E.g., *United States v. Vasquez-Gonzalez, supra,* 901 F.3d at pp. 1063–1064, 1068.) As we discuss below, De Leon's plea counsel Sean Swartz testified he understood that to be the case, and the letter De Leon received from immigration authorities reflects that view as well.

We note there may be some lack of clarity in federal law on this point. (*United States v. Gomez* (9th Cir. 2024) 115 F.4th 987, 990, 992, fn. 1, 996 [concluding, contrary to earlier Ninth Circuit decisions, that a conviction of assault with a deadly weapon under § 245, subd. (a)(1) is not a crime of violence].) But in any event, we have no occasion in this appeal to address whether we agree with the parties' concession as to the immigration consequences of De Leon's plea. As we discuss below, even assuming section 245, subdivision (a)(1) *is* deemed by federal law to be a crime of violence with mandatory deportation consequences, the record in our view establishes that Swartz advised De Leon of those consequences and that De Leon understood them, so there is no basis under section 1473.7 to vacate De Leon's state law conviction.

the United States, he has lived, attended school, and worked in California. His parents, siblings, and many cousins, aunts, and uncles live in the United States. Prior to his conviction, he was living with his mother, father, and sister. His father is a United States citizen, and his mother is a legal permanent resident.

De Leon stated in his declaration: "At no time prior to entering my guilty plea, did I fully understand that I would have permanent immigration consequences and could be subjected to removal proceedings based on this plea. I assumed that when my case was resolved and I did my time, all my requirements were complete as long as I stayed out of trouble. I assumed I would be safe from immigration consequences." De Leon asserted that, after his plea and just before his sentencing, he asked Swartz how the plea would affect his status as a legal permanent resident, and Swartz responded that De Leon would be "fine" as long as he did not associate with any gangs or get into trouble while in prison. De Leon stated: "If I had understood the permanent potential immigration consequences of pleading, I would have requested my attorney to negotiate for an immigration safe plea or even go as far as taking the case to trial."

In a supplemental filing, De Leon submitted a declaration from his mother, in which she stated that, between the time of De Leon's plea and his sentencing, she spoke to De Leon about his plea. De Leon's mother stated: "I asked [De Leon] if he knew what would happen to his legal permanent residence because of this case. He said he did not know. I told him I did not know what would happen either. I also suggested he talk to his criminal defense attorney about what immigration consequences he would have. He said he would talk to him." De Leon also submitted Swartz's handwritten file notes, email correspondence between Swartz and the prosecutor about plea

6

negotiations, and a letter from Swartz to De Leon about the prosecutor's plea offer. These materials do not mention the immigration consequences of De Leon's plea.

The prosecutor opposed De Leon's motion, arguing that De Leon had failed to prove prejudicial error because the bare allegations of improper advice from Swartz and De Leon's inadequate understanding of immigration consequences were not corroborated by contemporaneous evidence. The prosecutor further contended that, based on the severity of De Leon's crime and the strength of the evidence against him, the People would not have offered a more favorable plea deal or any deal that did not include an admission by De Leon to the charge of assault with a deadly weapon.

On October 4, 2023, the trial court (Judge Healy) held a hearing on De Leon's motion. De Leon did not testify or appear at the hearing because he was in immigration custody. Called by the prosecutor, Swartz testified that he had been a criminal defense attorney for about 27 years and that he had a custom and habit of explaining plea forms fully to his clients, including any immigration advisements. Swartz also had a pattern and practice of seeking immigration-neutral pleas in cases where the prosecution is receptive to that type of disposition. Swartz was aware that a plea to the crime at issue in De Leon's case—assault with a deadly weapon—carried immigration consequences, including deportation, exclusion from admission, and denial of naturalization as a United States citizen. Swartz refused to answer questions about his communications with De Leon due to the absence of an express waiver from De Leon of the attorney-client privilege.

In response to questioning by the prosecutor, Swartz stated the case file notes submitted by De Leon in support of his motion were not the entirety of Swartz's file for the case. When the court asked Swartz if the full case file

7

might include "something to indicate when immigration issues were discussed," Swartz stated, "I believe there would be responsive materials, if there was an express waiver."

The court denied De Leon's motion, concluding that De Leon "made a knowing and intelligent waiver and was aware of these issues [i.e., the immigration consequences of the plea]." The court stated: "I agree that Mr. Swartz is as thorough an attorney as we have around here. And demonstrating that today, his efforts to protect the client continue even when his performance is put at issue. [¶] . . . [I]t seems to me, based on the totality of the circumstances, based on this record, that Mr. De Leon was adequately advised of the consequences of this plea. [¶] And to the extent that it's relevant, there's nothing in the record that suggests to me that robust and aggressive negotiation efforts to find something—a plea that was more favorable to his immigration status would have occurred or that I would have signed off on it. [¶] So based on all of that, I'm going to deny the motion for relief. And I find that the defendant made a knowing and intelligent waiver."

De Leon appealed.[4]

## II. DISCUSSION

De Leon contends he met his burden to show he is entitled to relief under section 1473.7. We disagree.

### A. *Legal Standards*

Section 1473.7 allows noncitizens who are no longer in criminal custody to move to vacate a conviction if they can establish, by a preponderance of the evidence, that the conviction is "legally invalid due to prejudicial error

---

[4] An order granting or denying a section 1473.7 motion is appealable as an order after judgment affecting the substantial rights of a party. (§§ 1237, subd. (b), 1473.7, subd. (f).)

damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1); see *id.*, subd. (e)(1).) "A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (*Id.*, subd. (a)(1).)

A defendant seeking relief under section 1473.7 must satisfy two principal elements. "The defendant must first show that he did not meaningfully understand the immigration consequences of his plea. Next, the defendant must show that his misunderstanding constituted prejudicial error." (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*).)[5] "[P]rejudicial error . . . means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*).) If the defendant meets his burden of establishing prejudicial error, the court must grant the motion and allow the defendant to withdraw the plea. (*Id.* at p. 523.)

We apply an independent standard of review in an appeal from a section 1473.7 ruling. (*Vivar, supra,* 11 Cal.5th at pp. 524, 526, fn. 4, 527–528; accord, *Espinoza, supra,* 14 Cal.5th at pp. 319–320.) Under this

---

[5] In addition to these elements, a defendant must "also establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (§ 1473.7, subd. (e)(1).) This element is not disputed here. As noted, De Leon submitted evidence that immigration authorities have taken steps toward removing him on the basis that he was convicted of an aggravated felony, and he was in immigration detention at the time of the hearing on his motion to vacate.

standard, " 'an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' " (*Vivar*, at p. 527.)[6]

The Supreme Court explained in *Vivar* that " ' "[i]ndependent review is *not* the equivalent of de novo review," ' " and "[a]n appellate court may not simply second-guess factual findings that are based on the trial court's own observations." (*Vivar*, *supra*, 11 Cal.5th at p. 527.) The appellate court must give deference to the trial court's factual findings if they are based on " ' "the credibility of witnesses the [superior court] heard and observed," ' " although "courts reviewing such claims generally may ' "reach a different conclusion [from the trial court] on an independent examination of the evidence . . . even where the evidence is conflicting." ' " (*Ibid.*) In cases where the trial court's factual findings "derive entirely from written declarations and other documents," the trial court and the reviewing court " 'are in the same position,' " and no deference is owed.[7] (*Id.* at p. 528.) "Ultimately it is for the

---

[6] The *Vivar* court stated: "[O]ur embrace of independent review in this context is a product of multiple factors with special relevance here: the history of section 1473.7, the interests at stake in a section 1473.7 motion, the type of evidence on which a section 1473.7 ruling is likely to be based, and the relative competence of trial courts and appellate courts to assess that evidence." (*Vivar*, *supra*, 11 Cal.5th at p. 527.)

[7] The *Vivar* court noted that these aspects of the independent standard of review under section 1473.7 differ from the treatment of factual findings under the substantial evidence standard. When the substantial evidence standard applies, (1) "adequately supported factual findings not only merit deference, but are binding, on appeal" (*Vivar*, *supra*, 11 Cal.5th at p. 527, fn. 6), and (2) " 'an appellate court should defer to the factual determinations made by the trial court,' regardless of 'whether the trial court's ruling[s are based] on oral testimony or declarations' " (*id.* at p. 528, fn. 7).

appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7."[8] (*Ibid.*)

## B. *Whether De Leon Meaningfully Understood the Immigration Consequences of His Plea*

Whether we exercise independent review or employ a more deferential standard, we conclude De Leon did not show that he failed to meaningfully understand the immigration consequences of his plea. As noted, in his declaration submitted in support of his motion to vacate his conviction, De Leon asserted that he did not "fully understand" his plea would have "permanent immigration consequences," and that a post-plea conversation with his then-attorney Sean Swartz led him to believe his immigration status was not at risk. De Leon also submitted a declaration from his mother

---

[8] *Vivar* adopted this standard of review in a case where only the prejudice prong of the section 1473.7 inquiry—whether the defendant would have rejected the plea if he had understood its immigration consequences— was at issue. (*Vivar, supra,* 11 Cal.5th at p. 523 [accepting as true the Court of Appeal's finding that counsel failed to advise the defendant of the immigration consequences of his plea; "We review only the Court of Appeal's finding that Vivar suffered no prejudice on account of counsel's error. In examining that finding, we consider first what is the applicable standard of review."]; see *Espinoza, supra,* 14 Cal.5th at p. 319 [citing *Vivar* and stating "[w]e apply independent review to evaluate whether a defendant has demonstrated a reasonable probability that he would have rejected the plea offer had he understood its immigration consequences"].)

We will assume the independent review standard also applies in reviewing a trial court's findings pertaining to the first element of a section 1473.7 showing, i.e., that the defendant did not meaningfully understand the immigration consequences of his plea. (See, e.g., *People v. Curiel* (2023) 92 Cal.App.5th 1160, 1173, 1175, 1180 [stating generally that the independent review standard applies in evaluating "whether a defendant is entitled to relief under section 1473.7," and applying the standard to both elements].) In any event, we would conclude under any standard of review that De Leon is not entitled to relief.

11

recounting a conversation in which De Leon stated he did not know what immigration consequences his plea would have, and he submitted some of Swartz's file notes and correspondence that addressed other aspects of the plea deal but not the immigration consequences.

But set against this evidence (and in direct contradiction to De Leon's after-the-fact declaration) is the form De Leon signed under penalty of perjury at the time of his plea hearing, in which he confirmed his understanding that his plea "may, and with certain offenses will," result in deportation and other immigration consequences. As De Leon points out, a warning that deportation is possible (such as the standard advisement required by § 1016.5) is not enough to establish a defendant understood the mandatory immigration consequences of his plea. (*Vivar, supra*, 11 Cal.5th at p. 533; see *People v. Patterson* (2017) 2 Cal.5th 885, 889, 895.) And it has been held that even a waiver form advising of mandatory immigration consequences (such as stating that a defendant's plea " 'will result' " in deportation) " 'does not substitute for the advice of counsel, and it is not a categorical bar to relief.' " (*People v. Curiel, supra*, 92 Cal.App.5th at p. 1175.) But the form that De Leon signed here states more specifically that De Leon *had* discussed the matter with his attorney and that "I know whether or not conviction for this offense requires mandatory deportation and exclusion." And as noted, the form also includes attorney Swartz's declaration under penalty of perjury that he *did* advise De Leon of the immigration consequences of his plea. Based on the competing documentary evidence alone, we are not persuaded De Leon has carried his burden to show he did not understand the immigration consequences of his plea.

Moreover, the record here is not limited to documentary evidence. Swartz testified at the hearing on the motion to vacate that it is his pattern

and practice to advise each client about the immigration consequences of a plea. Swartz knew that a plea to the crime charged here—assault with a deadly weapon—carried immigration consequences, including deportation, exclusion from admission, and denial of naturalization as a United States citizen. Swartz stated the case file notes submitted by De Leon were not the entirety of Swartz's file. In response to questioning about whether his full case file might include information about whether immigration issues were discussed, Swartz stated, "I believe there would be responsive materials, if there was an express waiver [of the attorney-client privilege]." The trial court's ruling reflects that it credited Swartz's testimony about his pattern and practice in plea matters, and under the applicable review standard here, we extend "particular deference" to the court's evaluation of live witness testimony. (*Vivar*, *supra*, 11 Cal.5th at p. 527.)

Based on this evidence, we conclude De Leon did not show that Swartz failed to advise him of the immigration consequences of his plea. We recognize that a defendant's "own error" in failing to understand a plea's immigration consequences (apart from whether counsel provided deficient advisements) can establish the first prerequisite to relief under section 1473.7. (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1009.) But here, De Leon's assertion in his declaration that he failed to understand the immigration consequences of his plea is based in part on his claim that Swartz failed to provide that information to him. And in any event, we are not persuaded that De Leon did not understand the immigration consequences of his plea. In our view, De Leon's broad after-the-fact statements on this point (when set against the statements he and Swartz made under penalty of perjury at the time of the plea, as well as Swartz's in-court testimony about his practices in these matters) fail to establish, by a

13

preponderance of the evidence, that he failed to meaningfully understand the immigration consequences of his plea. (§ 1473.7, subds. (a)(1), (e)(1).) He is not entitled to vacate his conviction or withdraw his plea.

## C. *Prejudice*

Even if De Leon had established that he did not understand the immigration consequences of his plea, we would conclude he failed to show "that his misunderstanding constituted prejudicial error." (*Espinoza, supra,* 14 Cal.5th at p. 319.) As noted, showing prejudice in this context "means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Vivar, supra,* 11 Cal.5th at p. 529.)

"To determine whether there is a reasonable probability a defendant would have rejected a plea offer if he had understood its immigration consequences, courts must 'consider the totality of the circumstances.' [Citation.] 'Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible.' [Citations.] Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial. [Citation.] These factors are not exhaustive, and no single type of evidence is a prerequisite to relief." (*Espinoza, supra,* 14 Cal.5th at pp. 320–321.)

The Attorney General acknowledges, and we agree, that De Leon showed he had strong ties to the United States at the time of his plea. De Leon states in his declaration that he came to the United States as a child

and has spent most of his life here; many of his relatives live in the United States; and his father is a citizen. And De Leon states in his declaration that his priority has always been to remain in the United States with his family.

But other factors weigh against a finding of prejudice on this record. There was no reason to believe an immigration-neutral disposition (i.e., one where De Leon would spend less than one year in custody) was possible. Swartz testified he generally seeks immigration-neutral pleas in cases where the prosecution is receptive to that type of disposition, but there was no record of such a disposition being offered here. And both the prosecutor and the trial court (the same judge who had presided at the plea hearing a few years earlier) suggested such a resolution was never a reasonable possibility.

De Leon's contention that he would have rejected the plea and gone to trial is also undermined by what likely would have resulted had he done so. In addition to T.V.'s own statement, other witnesses and surveillance video footage supported that De Leon assaulted T.V. by driving his car toward him, " 'floor[ing] it,' " and striking T.V., causing significant injuries. Moreover, it is unlikely De Leon would have rejected the plea and gone to trial in light of the disparity between the potential sentence after conviction at trial and the sentence he received as part of his plea deal. In contrast to the three-year sentence he received under the deal, conviction at trial could have resulted in up to a seven-year prison sentence—the four-year upper term for assault with a deadly weapon (§ 245, subd. (a)(1)), plus three years for the great bodily injury enhancement (§ 12022.7, subd. (a))—with limited available credits (§§ 2933.1, subd. (a), 667.5, subd. (c)(8)). This disparity and the strength of the evidence against De Leon weigh against a finding that he would have rejected the plea.

After considering the totality of the circumstances, we conclude De Leon did not establish by a preponderance of the evidence that he was prejudiced by his alleged misunderstanding of the immigration consequences of his plea.

**D. *De Leon's Other Arguments Are Not Persuasive***

De Leon presents a variety of other attacks on the trial court's ruling, but his arguments are not persuasive. De Leon contends the court misunderstood the applicable burden of proof and incorrectly focused on whether Swartz provided ineffective assistance. We do not find in the record any misstatement by the court as to the burden of proof, and in any event we have determined independently that De Leon did not establish prejudicial error by a preponderance of the evidence. As to ineffective assistance, the court expressly noted that a showing on that point is not a prerequisite to relief under section 1473.7, while recognizing that an important thrust of De Leon's argument was that Swartz provided inadequate advisements. We find no error.

Next, De Leon asserts briefly, and for the first time on appeal, that the trial judge should have recused himself from hearing De Leon's section 1473.7 motion because the judge allegedly could not be impartial in evaluating the testimony of attorney Swartz, who had represented De Leon at the plea hearing. De Leon bases his claim of judicial bias on a statement the trial judge made during the hearing on De Leon's section 1473.7 motion. The judge stated: "I guess I should disclose to—just for Mr. Camacho [De Leon's counsel at the section 1473.7 hearing], just so you know, Mr. Swartz has been an attorney in my court for years. I mean, I've known him for—even before I was a judge. I knew him when I was an attorney, as well, I believe. [¶] . . . [¶] I don't know if we had cases together. But he has been

16

and he is—I can't really ignore history completely. He is a very thorough fellow, in my experience. And I appreciate the fact he's doing this now." De Leon claims the judge's statement reveals he had a "clear bias and preference" toward Swartz, requiring the judge to recuse himself.

De Leon forfeited any claim of judicial bias by failing to raise it in the trial court. (*People v. Johnson* (2018) 6 Cal.5th 541, 592.) De Leon notes the trial judge made the above disclosure after the section 1473.7 hearing had begun, but De Leon provides no explanation as to why he could not have raised a judicial bias claim at that time if he believed it had merit. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1112 [defendant's willingness to let the entire trial pass without raising an appropriate objection "not only forfeits his claims on appeal but also strongly suggests they are without merit"].) In any event, the judge's statement that he was familiar with Swartz's work and reputation as a thorough advocate does not suggest that the judge could not fairly evaluate Swartz's testimony and the other evidence presented at the hearing.

Finally, De Leon argues, again for the first time on appeal, that alcohol abuse affected his ability to understand the plea proceedings and the immigration consequences of his plea. This claim is speculative and does not persuade us the trial court erred. Although the record shows De Leon had an alcohol abuse problem, he did not claim in his declaration in support of his section 1473.7 motion that alcohol abuse caused him to fail to understand the immigration consequences of his plea. And De Leon affirmed under penalty of perjury when he signed his plea form that he was not under the influence of alcohol or any other substance. De Leon made coherent answers at the plea hearing, and the court found he made a knowing, intelligent, and voluntary waiver of his rights. There is no basis for reversal.

17

## III. DISPOSITION

The order denying De Leon's section 1473.7 motion to vacate his conviction and withdraw his plea is affirmed.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.