Filed 6/16/25  P. v. Mendoza CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H052037 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. F1662153) |
| v. | |
| FLORIBERTO PEREZ MENDOZA, | |
| Defendant and Appellant. | |

Appellant Floriberto Perez Mendoza appeals from the denial of his motion to vacate his 2017 assault conviction under Penal Code section 1473.7.[1]  He argues that his trial counsel failed to adequately explain the mandatory immigration consequence of his plea, and the error was prejudicial.  The Attorney General concedes that the trial court erred by denying the motion to vacate.  Finding the concession appropriate, we reverse the trial court's denial of the motion and remand the matter for further proceedings.

## I.     BACKGROUND

### A.     *The Operative Complaint and Mendoza's Plea*

In August 2017, by agreement with the Santa Clara County District Attorney, Mendoza pleaded no contest to one count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)) and admitted that he personally inflicted great

_____

[1] Unspecified statutory references are to the Penal Code.

bodily injury on someone other than an accomplice in his commission of the offense (§ 12022.7, subd. (a)). He acknowledged the offense was a serious or violent felony and waived his right to appeal. In return, the Santa Clara County District Attorney agreed to recommend Mendoza be granted probation including a term of up to one year in county jail.[2] Although neither the plea form nor the parties at the plea hearing specified the parties' agreement as to the balance of the operative fourth amended complaint, in which Mendoza was alleged to have assaulted and personally inflicted great bodily injury on a different person, the clerk's minutes reflects these were to be dismissed.

On the plea form, Mendoza initialed the box next to the following statement, among others: "I understand if I am not a citizen of the United States, my plea of guilty or no contest in this case may result in my deportation (removal), exclusion from admission (re-entry) to the United States or denial of naturalization and amnesty pursuant to the laws of the United States. My attorney has talked to me about this, and I am entering my plea understanding these consequences." Next to this statement there is a handwritten asterisk, but the form contains no indication as to its significance. At the plea hearing, the trial court did not independently advise Mendoza under section 1016.5 of potential immigration consequences of his plea.

In October 2017, consistent with the plea agreement and without objection or argument by either party, the trial court placed Mendoza on three years' probation and ordered that he serve one year in county jail. The trial court dismissed count 1.

**B.** *The Motion to Vacate*

In January 2024, Mendoza moved to vacate his conviction, arguing that he did not meaningfully understand the immigration consequences of his plea, including that his

---

[2] Although the preprinted plea form included the "up to" qualification, counsel at the plea hearing represented that the agreement was "one year," without qualification.

conviction subjected him to mandatory deportation and permanent exclusion from the United States.

Opposing the motion to vacate, the People argued that Mendoza's counsel had initially sought "a more immigration neutral offer" upon finding that Mendoza was a Deferred Action for Childhood Arrivals (DACA) recipient who had a pending application for permanent residence, but the prosecutor had rejected the offer for public safety reasons. Attached to the People's opposition was an e-mail that Mendoza's primary defense counsel[3] sent to the prosecutor in charge of Mendoza's case. In her e-mail, primary defense counsel expressed concern "about the collateral immigration consequences [Mendoza] will face with the proposed resolution." Primary defense counsel forwarded to the prosecutor an e-mail from an immigration resource attorney, who recommended a plea to a misdemeanor violation of section 245 with a sentence of 179 days and avoiding reference to a "gang" in any stay away orders. The immigration resource attorney explained that Mendoza could lose his status as a DACA recipient if convicted of any felony or significant misdemeanor, that a felony conviction for a crime involving moral turpitude would make him inadmissible and therefore ineligible to "qualify for a visa through his mother's petition," and that an aggravated felony conviction would make him deportable, subject to mandatory detention, and ineligible for most immigration relief.[4] Adding that Mendoza's offense would be considered an

___

[3] Mendoza's first attorney (primary defense counsel) represented him early in settlement negotiations, including in consultation with an immigration resource attorney. Mendoza briefly retained substitute counsel (interim counsel) after these early settlement discussions, but this interim counsel withdrew before Mendoza, again represented by primary defense counsel, settled his case.

[4] Under federal law, conviction for a "crime of violence" becomes an "aggravated felony" when the term of imprisonment imposed is at least one year. (18 U.S.C. § 16(a) [defining "crime of violence"]; 8 U.S.C. § 1101(a)(43)(F) [defining "aggravated felony"].)

"aggravated felony if the sentence is one year or more," the immigration resource attorney advised in her email that Mendoza's sentence "should be 364 [days] max."

**C.      *The Hearing on the Motion and the Trial Court's Denial***

In February 2024, the trial court held a hearing on the motion to vacate.[5]  At the hearing, Mendoza testified that he had come to the United States when he was three or four years old and had spent most of his life here.  Mendoza asserted that he would not have accepted the plea had he known of the immigration consequences, and he would have been willing to go to trial and, if possible, would have agreed to more jail time in exchange to a more immigration neutral disposition.

Mendoza acknowledged the asterisk next to the immigration consequences recital on his plea form but that he could not recall its significance.  According to Mendoza, his interim counsel discussed potential immigration consequences with him, and although Mendoza could not remember the specifics of their conversation, he did not believe interim counsel warned him that he "was going to be deported" or that he "could never come back."  Mendoza told interim counsel that he was a DACA recipient and that his mother was a lawful permanent resident.  Although Mendoza had an "ongoing petition . . . to obtain some legal status here" through his mother, he did not have the same discussion with his primary defense counsel, understanding that "she would already [be] aware since she already had [Mendoza's] paperwork" from with interim counsel.  According to Mendoza, the only advice primary defense counsel gave him about immigration consequences was on the day of the plea hearing, when Mendoza asked about the immigration advisement on the plea form:  Mendoza understood primary defense counsel's advice to be that "there wasn't nothing to be concerned about" and that the plea agreement was "the best deal that I was going to get."

---

[5] The judge who had taken Mendoza's plea was not the judge who heard the motion to vacate.

Mendoza testified that he first learned a few years after his conviction that his criminal case was harming his immigration status. In connection with his petition to obtain legal status in the United States, Mendoza "tried to . . . renew" his DACA status but learned he could not do so.

The prosecutor handling plea negotiations in Mendoza's case testified that he had reviewed the reports and surveillance video in the case before extending the plea offer for a plea to a strike offense with the great bodily injury enhancement. The prosecutor declined primary defense counsel's e-mail proposal to settle for a misdemeanor plea and a 179-day sentence. The prosecutor recalled no other offers being made in Mendoza's case, though Mendoza briefly "brought in a new defense attorney, [interim counsel]," after primary defense counsel had proposed the misdemeanor but before she returned to represent Mendoza for his eventual plea. The prosecutor had no memory of further discussion of immigration consequences but testified that his "normal practice" was to agree to a term of 364 days instead of 365 days for immigration purposes.

The trial court denied Mendoza's motion to vacate his conviction. Based on the evidence, the court inferred that Mendoza had "substantial communication" with primary defense counsel about his plea, citing the e-mails that primary defense counsel sent to the prosecutor seeking a more immigration-neutral disposition. The trial court thus discounted Mendoza's assertion that he had not spoken to primary defense counsel about the immigration consequences of his plea. The trial court thereafter found that although Mendoza had established prejudice from his plea, he failed to demonstrate that he misunderstood the immigration consequences.

## II.  DISCUSSION

### A.  *Legal Principles and Standard of Review*

Under section 1473.7, a defendant must demonstrate that his conviction is "legally invalid due to prejudicial error damaging [his or her] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration

5

consequences of a conviction or sentence." (*Id.*, subd. (a)(1).) "The defendant must first show that he did not meaningfully understand the immigration consequences of his plea. Next, the defendant must show that his misunderstanding constituted prejudicial error. '[P]rejudicial error . . . means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.' " (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*).) The moving party must establish by a preponderance of the evidence both a lack of understanding of the immigration consequences of the plea and that there was prejudicial error. (§ 1473.7, subd. (e)(1).) And when making a motion under section 1473.7, subdivision (a)(1), "the moving party shall also establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (*Id.*, subd. (e)(1).)

A trial court's ruling on a section 1473.7 motion is subject to independent review. (*Espinoza*, *supra*, 14 Cal.5th at p. 319.) Applying this standard, we " 'exercise[ our] independent judgment to determine whether the facts satisfy the rule of law.' " (*People v. Vivar* (2021) 11 Cal.5th 510, 527 (*Vivar*).) "An appellate court may not simply second-guess factual findings that are based on the trial court's own observations." (*Ibid.*) Thus, an "appellate court[] should . . . give particular deference to factual findings based on the trial court's personal observations of witnesses." (*Id.* at pp. 527–528.) But on appellate review, we may " ' "reach a different conclusion [from the trial court] on an independent examination of the evidence . . . even where the evidence is conflicting" ' " on the trial court's factual determinations. (*Id.* at p. 527, citing *In re Resendiz* (2001) 25 Cal.4th 230, 249 (lead opn. of Werdegar, J.); see also *Vivar*, at p. 527, fn. 6 [distinguishing substantial evidence review, where factual findings are binding if supported by substantial evidence, from independent review].)

6

**B.** *Misunderstanding of the Immigration Consequences*

The trial court found that Mendoza had demonstrated prejudice but not error, "at least . . . not to the level required by this [c]ourt to determine he did not understand what the [immigration] consequences [of the plea] could and would be." Because the court held an evidentiary hearing on Mendoza's motion and personally observed the witnesses, we accord deference to the trial court's factual findings, particularly its credibility findings as to Mendoza. (See *People v. Curiel* (2023) 92 Cal.App.5th 1160, 1174 (*Curiel*); *Vivar*, *supra*, 11 Cal.5th at pp. 527–528.) We accordingly accept the trial court's finding that Mendoza had in fact discussed his immigration status and desire to avoid immigration consequences with primary defense counsel, a discussion the court found that Mendoza "clearly does not recall." It is undisputed that primary defense counsel raised Mendoza's DACA status with the immigration resource attorney and with the prosecutor before interim counsel briefly substituted in as counsel.

As to the extent and adequacy of Mendoza's understanding of those consequences, however, we reach a different conclusion than the trial court, based on our independent examination of the facts. (*Curiel*, *supra*, 92 Cal.App.5th at pp. 1174–1175; *Vivar*, *supra*, 11 Cal.5th at p. 527.) While the trial court appropriately inferred from the e-mail communications that Mendoza and primary defense counsel discussed certain immigration consequences, we have no basis to impute to Mendoza detailed knowledge of the various facets of those consequences or how certain of them might be avoided. To begin, Mendoza was not copied on primary defense counsel's e-mails with the immigration resource attorney. And more importantly, the prosecutor's testimony casts doubt on whether primary defense attorney herself understood that the prosecutor's rejection of a misdemeanor disposition to preserve Mendoza's DACA status did not foreclose an alternative plea bargain that might at least mitigate the worst of the immigration consequences that turned on the specific character of the felony conviction and the length of the sentence.

"[I]n deciding whether the defendant has shown error, the focus of our inquiry is on the defendant's own error in misunderstanding the immigration consequences of the plea." (*Curiel*, *supra*, 92 Cal.App.5th at p. 1176.) Here, those consequences extended beyond the loss of DACA status that any felony conviction would entail. (*Texas v. United States* (5th Cir. 2022) 50 F.4th 498, 508 [DACA criteria include having no felony or significant misdemeanor conviction].) A conviction for a felony crime of moral turpitude would prevent him from obtaining legal status through the petition of his lawful permanent resident mother. (8 U.S.C. §§ 1255(a) [alien who seeks to adjust status to lawful permanent resident must be admissible], 1182(a)(2)(A)(i)(I) & (ii)(II) [inadmissibility from crime of moral turpitude other than a petty offense]; *Safaryan v. Barr* (9th Cir. 2020) 975 F.3d 976, 981 [assault with deadly weapon or force likely to produce great bodily injury is crime of moral turpitude].) And under current law, a violation of section 245, subdivision (a)(1) is a crime of violence that becomes an aggravated felony if a defendant is ordered to serve at least one year in confinement. (*United States v. Vasquez-Gonzalez* (9th Cir. 2018) 901 F.3d 1060, 1063–1064, 1068 (*Vasquez-Gonzalez*); 18 U.S.C. § 16(a) [defining "crime of violence"]; 8 U.S.C. § 1101(a)(43)(F) [defining aggravated felony as a crime of violence for which the term of imprisonment is at least one year].) A person not a citizen of the United States who is convicted of an aggravated felony is also ineligible for relief from removal—including cancellation of removal (8 U.S.C. § 1229b(b)(1)(C)), asylum (8 U.S.C. § 1158(b)(2)(A)(ii) & (B)(i)), and voluntary departure (8 U.S.C. § 1229c(a)(1)—subject to mandatory removal (8 U.S.C. § 1227(a)(2)(A)(iii)) in "expedited" proceedings (8 U.S.C. § 1228(c)), and is thereafter permanently inadmissible (8 U.S.C. § 1182(a)(9)).[6]

_____

[6] After the denial of Mendoza's petition, the Ninth Circuit held in *United States v. Gomez* (9th Cir. 2024) 115 F.4th 987 that assault with a deadly weapon under section 245, subdivision (a)(1) is not a crime of violence because the statute "sweeps in reckless uses of force." (*Id.* at p. 996.) But the Ninth Circuit recently granted the

8

In short, the immigration consequences in Mendoza's case were multifaceted—ranging from nonrenewal of his DACA status to mandatory deportation, ineligibility for even voluntary departure, and permanent inadmissibility—and the attendant consequences turned on different factors, including the nature of the felony and length of his sentence. The immigration resource attorney outlined this range of consequences to primary defense counsel in her e-mail. Yet after the prosecutor rejected primary defense attorney's offer of a misdemeanor and 179-day sentence, the prosecutor could recall no other negotiations on Mendoza's behalf. In other words, despite the immigration resource attorney's explanation that a 365-day sentence could cause Mendoza's mandatory deportation and immediate removal and that any sentence needed to be "364 [days] max," neither of Mendoza's attorneys followed the deputy district attorney's rejection of the proposed misdemeanor disposition with a proposal for a reduction of a single day in jail. The prosecutor himself testified that he routinely agreed to 364-day proposals for immigration purposes, suggesting that this slight modification to Mendoza's sentence was available to at least spare him the most extreme of the known immigration consequences.

Primary defense counsel, to be sure, conscientiously sought the immigration resource attorney's opinion and attempted to preserve Mendoza's DACA status and prospects for admission by avoiding a felony conviction for a crime involving moral turpitude. But her acquiescence in the 365-day jail term leads us to infer that she may not have appreciated that avoiding an aggravated felony conviction would preserve Mendoza some limited potential relief from removal. So we cannot infer that she fully advised Mendoza of the different immigration consequences attendant upon a felony, a felony

---

government's petition for rehearing en banc, vacating this prior decision and leaving *Vasquez-Gonzalez* as controlling precedent in the Ninth Circuit. (*United States v. Gomez* (9th Cir. 2025) 133 F.4th 1083.)

9

crime involving moral turpitude, and an aggravated felony.[7] Indeed, we can only speculate that primary defense counsel communicated the full extent of the possible immigration consequences to Mendoza. There is thus an "absence of evidence supporting the inference" that the *full* scope of mandatory immigration consequences was discussed with Mendoza prior to his plea. (*People v. Carrillo* (2024) 101 Cal.App.5th 1, 18 (*Carrillo*).)

Indeed, there is no affirmative evidence in the record that reflects the scope of the immigration consequences Mendoza was informed of. Despite the generic advisement on the plea form, the trial court in taking Mendoza's plea did not comply with section 1016.5, and primary defense counsel at the hearing did not represent that she had further advised Mendoza of these consequences. (Cf. *People v. Soto* (2022) 79 Cal.App.5th 602, 609 (*Soto*) [error in misunderstanding mandatory immigration consequences when plea form indicated only that there "might" be immigration consequences, there was no mention during plea colloquy of immigration consequences, and no representation by defense counsel that they had provided such advisements].) Although Mendoza initialed a generic acknowledgment that he *might* be subject to certain immigration consequences, such an advisement did not sufficiently inform Mendoza that he faced mandatory and permanent immigration consequences as a result of his plea and a one-year county jail term. (*Vivar*, *supra*, 11 Cal.5th at p. 521; *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 905–906; *People v. Espinoza* (2018) 27 Cal.App.5th 908, 916–917.) Nor is there evidence that the handwritten asterisk on the plea form signified that either counsel devoted special attention to that advisement. To the contrary, Mendoza testified that terms like crimes involving moral turpitude or aggravated felony were never discussed with him.

---

[7] Although the trial court in denying Mendoza's motion noted that the plea form suggested that the agreement to 365 days represented only a maximum, this was not the parties' understanding at the plea hearing or at sentencing.

Additional factors further support Mendoza's assertion that he misunderstood the immigration consequences. At the time of his plea, Mendoza was only 21 years old. (See *Carrillo*, *supra*, 101 Cal.App.5th at p. 18 [noting defendant's youth when considering whether he understood immigration consequences].) And "[b]oth the United States and California Supreme Courts have recognized that federal immigration law can be complex and there are numerous situations where the consequences of a conviction are unclear." (*Ibid.*)

Accepting the trial court's finding that Mendoza discussed *certain* immigration consequences with primary defense counsel does not compel the further inference that he understood the actual consequences. In sum, we find that based on our independent review of the evidence, Mendoza has satisfied his burden of demonstrating that he did not "meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his] conviction or sentence." (§ 1473.7, subd. (a)(1); see also *Espinoza*, *supra*, 14 Cal.5th at p. 319.)

## C. *Prejudicial Error*

The trial court found that Mendoza satisfied the second prong of the section 1473.7 analysis by demonstrating prejudice. Independently reviewing the evidence, we agree.

Mendoza has adequately shown that there is a "reasonable probability that [he] would have rejected the plea if [he] had correctly understood its actual or potential immigration consequences." (*Vivar*, *supra*, 11 Cal.5th at p. 529.) In considering this factor, courts must consider the totality of the circumstances and factors relevant to the inquiry include " 'the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible.' " (*Espinoza*, *supra*, 14 Cal.5th at p. 320.) "[R]elief should be granted if the court . . . determines the defendant would have chosen not to plead guilty or

11

nolo contendere, even if the court also finds it not reasonably probable the defendant would thereby have obtained a more favorable outcome." (*People v. Martinez* (2013) 57 Cal.4th 555, 559; see also *Soto*, *supra*, 79 Cal.App.5th at p. 610; *People v. Mejia* (2019) 36 Cal.App.5th 859, 871 [prejudice occurs when there is a reasonable probability person would not have pleaded guilty and would have risked going to trial "even if only to figuratively throw a ' "Hail Mary" ' "].)  And here, there was corroborating evidence that remaining in the United States was a priority to Mendoza given his strong ties to this country.  It is undisputed that he had been waiting for adjustment of his immigration status and had been attempting to renew his DACA status when he learned that he could no longer do so.  Mendoza's connection to the United States constitutes "contemporaneous objective facts that corroborate [his] concern about the immigration consequences of his plea options." (*Vivar*, *supra*, 11 Cal.5th at p. 530.)

Furthermore, even if Mendoza might not have risked trial, it is reasonably probable that he would at least have sought a one-day reduction in the negotiated jail term, had he understood that the marginal reduction would spare him aggravated felon status.  And there is undisputed evidence that, at the time of the plea, there was "reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar*, *supra*, 11 Cal.5th at p. 530.)  The prosecutor testified that he typically agrees to 364-day terms instead of 365-day terms for immigration purposes.  As previously discussed, a one-day reduction in Mendoza's jail term would have, at minimum, prevented the conviction from constituting an aggravated felony.[8]

---

[8] At the hearing on the motion, the trial court noted that it was "meaningful" that the negotiated disposition was for a sentence of up to 365 days, or a "one year top"; thus, the trial court had retained discretion at sentencing to impose less than a one-year term. But as the Attorney General observes, this focus on the maximum sentence the trial court could have imposed ignores that had Mendoza bargained for and received a 364-day limit on the jail term, he would have not risked categorizing his felony conviction as an aggravated felony in the first instance.

For these reasons, we agree with the parties that Mendoza has demonstrated "more than an abstract possibility" that he would have rejected the plea had he correctly understood the immigration consequences.  (*Carrillo*, *supra*, 101 Cal.App.5th at p. 19.)

### III.    DISPOSITION

The order denying Mendoza's motion under Penal Code section 1473.7 is reversed and the matter is remanded to the trial court to permit Mendoza to withdraw his plea.

_____

LIE, J.

WE CONCUR:

_____

GROVER, Acting P. J.

_____

DANNER, J.

*People v. Mendoza*
H052037